**Rockie Lane HILLIARD,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

No. 96–6291.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1998.

Decided Sept. 21, 1998.

Rockie Lane Hilliard, Federal Correctional Institution, El Reno, OK; Jennifer L. Smith (argued and briefed), Nashville, TN, for Petitioner–Appellant.

Joseph C. Murphy, Jr. (argued and briefed), Asst. U.S. Attorney, Memphis, TN, for Respondent–Appellee.

Before: MARTIN, Chief Judge; NORRIS and CLAY, Circuit Judges.

## OPINION

MARTIN, Chief Judge.

Rockie Lane Hilliard appeals the judgment of the district court denying his motion under 28 U.S.C. § 2255 to vacate his sentence for using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Hilliard bases his collateral attack of his conviction on his contention that an instruction given to the jury during his trial on the term "use" was erroneous in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Although we find that the jury instructions were erroneous, we conclude that there was sufficient evidence for a properly instructed jury to find that Hilliard carried his firearm during and in relation to a drug trafficking crime. We therefore do not believe Hilliard was prejudiced by the district court's error. We AFFIRM the district court's decision.

## FACTS

On March 30, 1990, officers with the Organized Crime Unit of the Memphis Police Department executed a search warrant at a house located at 3271 Henry Street in Memphis, Tennessee. As the officers forced their way into the house, they saw three men sitting around a dining table in the main room. The men immediately leapt to their feet, ran into the adjoining kitchen, and attempted to exit through the back door. In their haste, all three collided with the inward-opening door, breaking the glass and tumbling to the floor. The officers, rushing in to secure the suspects, observed Hilliard removing a gun from his waistband and shoving it under the nearby stove. Moments later, the officers retrieved the weapon, a loaded .357 magnum revolver. The officers subsequently searched the house. On the dining table, where Hilliard had been seated, the officers discovered a mound of cocaine powder and four plastic bags, each containing at least 225 grams of cocaine. Also on the table were $15,000 in cash, an electronic scale, bottles of a common cocaine cutting agent, and a number of plastic baggies.[1] Underneath the table, the officers found a kilogram of cocaine and a loaded pistol.

---

1. A cutting agent, or "cut," is a soluble solution used to dilute cocaine prior to its sale in order to increase its volume.

A federal grand jury for the Western District of Tennessee returned a two-count indictment against Hilliard. Count One charged that Hilliard and his co-defendants, being aided and abetted by each other, unlawfully, knowingly, and intentionally possessed with the intent to distribute approximately 2,252.1 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Two, which is the subject of this appeal, charged that Hilliard knowingly and intentionally carried and used a firearm in violation of 18 U.S.C. § 924(c)(1).

Neither party objected to the jury instructions. Hilliard was convicted on both counts of the indictment and sentenced to eight years, one month on Count One and five years on Count Two, to be served consecutively. In a direct appeal of his conviction, Hilliard argued that the district court erred in excluding evidence of his inculpability and that the government had failed to produce sufficient evidence to establish the required elements of his offenses. This Court affirmed Hilliard's conviction in *United States v. Hilliard*, 11 F.3d 618 (6th Cir.1993). Hilliard then challenged his § 924(c) conviction *pro se* in a motion to vacate under 28 U.S.C. § 2255 arguing: (1) that there was insufficient evidence to support his conviction in light of *Bailey*; and (2) that his conviction must be overturned because the jury may have relied upon a constitutionally defective jury instruction to convict him. The district court denied his motion, finding that there was sufficient evidence to establish beyond a reasonable doubt that Hilliard had "carried" a weapon within the meaning of § 924(c)(1). It did not pass on the issue of sufficient evidence of Hilliard's "use" of a firearm. Hilliard filed a notice of appeal that was construed as an application for a certificate of appealability pursuant to Fed. R.App. P. 22(b). This Court granted Hilliard's application with respect to the following issues: (1) whether sufficient evidence supports Hilliard's conviction under 18 U.S.C. § 924(c)(1); and (2) whether the jury "necessarily based" its verdict to convict Hilliard on a constitutionally valid instruction.

## DISCUSSION

In reviewing the denial of a 28 U.S.C. § 2255 petition, this Court applies a *de novo* standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous. *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994). In a collateral attack, to obtain post-conviction relief for an erroneous jury instruction to which there was no objection at trial, a defendant must show either (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *Rattigan v. United States*, 151 F.3d 551, 555 (6th Cir.1998) (citing *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)), or (2) that he is actually innocent. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir.1991) (en banc). Part and parcel of Hilliard's claim is that under the correct interpretation of § 924(c)(1), his behavior is not culpable. In addressing the sufficiency of the evidence, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Jones*, 124 F.3d 781, 784 (6th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

### A. Erroneous Jury Instruction

Hilliard was charged in Count Two of his indictment with using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The jury instructions pertaining to this charge stated in pertinent part:

The term "use" as that term is used in the statute contemplates more than the physical handling or manipulation of a firearm. It refers to carrying out a purpose by means of the firearm or intentionally facilitating the execution of a drug trafficking offense. In other words, the defendant is considered to have used a firearm if its purpose in any manner facilitated the carrying out of a drug trafficking crime.

The government is not required to prove that the defendant actually fired or brand-

ished it at someone in order to prove use as that term is used in this instruction. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of the drug trafficking crime. However, the mere possession without more of a firearm by the defendant during the course of a drug trafficking crime is not sufficient for a finding of guilt. Possession is sufficient if it is an integral part of a drug trafficking crime.

The term "carry" as that term is used in the statute means to transport or cause the transportation of a firearm from one place to another during a drug trafficking crime. . . .

J.A. at 54–55.

This instruction permitted the jury to convict Hilliard under the "fortress theory" or "facilitation theory." These theories interpreted the "use" and "carry" language of § 924(c)(1) broadly and allowed for a conviction under this statute if it reasonably appeared that the firearm found on a premises controlled or owned by a defendant was in his actual or constructive possession and was to be used to protect the drugs or otherwise to facilitate the drug transaction. *United States v. Henry,* 878 F.2d 937, 944 (6th Cir. 1989). These theories have not been followed after *Bailey. See United States v. Anderson,* 89 F.3d 1306, 1315 (6th Cir.1996) (jury instruction was erroneous where jury was permitted to convict for use if gun facilitated drug transaction), *cert. denied,* —— U.S. ——, 117 S.Ct. 786, 136 L.Ed.2d 728 (1997); *United States v. Bingham,* 81 F.3d 617, 623–24 (6th Cir.), *cert. denied sub nom., Petaway v. United States,* —— U.S. ——, 117 S.Ct. 250, 136 L.Ed.2d 177 (1996); *United States v. Moore,* 76 F.3d 111, 114 (6th Cir. 1996). To determine what the instruction should have been requires an examination of the recent clarification of the operative statutory language in § 924(c)(1).

### "Using a Firearm"

■ In *Bailey,* the Supreme Court adopted a narrow interpretation of the term "use" under § 924(c)(1) and rejected the theory that the "use" prong of § 924(c)(1) could be satisfied upon a showing that the presence of the firearm "facilitated" the commission of the drug offense, or by the mere possession of a firearm by the offender. *Bailey,* 516 U.S. at 148–49, 116 S.Ct. 501. Instead, *Bailey* redefined "use" as "active employment," thereby requiring that the firearm be "an operative factor in relation to the predicate offense." *Id.* at 143, 116 S.Ct. 501. The types of culpable behavior that amount to "use" include: brandishing, displaying, bartering, striking with, firing or attempting to fire a firearm. *Id.* at 148, 116 S.Ct. 501. Under the new interpretation of "use," liability under § 924(c)(1) attaches for actual use, not intended use. *Id.* at 149–50, 116 S.Ct. 501.

In *United States v. Taylor,* 102 F.3d 767, 770 (6th Cir.1996) (per curiam), *cert. denied,* —— U.S. ——, 118 S.Ct. 327, 139 L.Ed.2d 254 (1997), this Court considered a case in which the jurors were permitted to convict the defendant if they found that he "had possession of the weapon . . . in the sense that he had both the power and the intention, . . . to exercise dominion or control over it." This Court found these instructions to the jury to be incorrect after *Bailey.* This Court found that the instructions allowed for a conviction based upon possession and declared them invalid. *Id.* In *Moore,* the jury was instructed that firearms are "used" in contravention of § 924(c)(1) if they are "found on the premises controlled or owned by defendant and in his actual or constructive possession [and] are to be used to protect the drugs or otherwise facilitate a drug transaction. . . ." 76 F.3d at 114. These instructions permitted the jury to convict the defendant for using a firearm if it was within his actual or constructive possession or if it facilitated the crime. Likewise, the instructions were found to be inadequate after *Bailey. Id.* at 113–14.

■ The language of the jury instructions in the present case is equally repugnant of *Bailey.* In this case, the jury was permitted to convict Hilliard for "use" upon a finding of behavior that was less than active employment, namely, if his possession contributed to the crime or if it facilitated the crime. As

such, the instructions are invalid in light of *Bailey.*

### "Carrying a Firearm"

The Supreme Court has recently clarified the contours of the term "carry" as it is to be interpreted under § 924(c)(1). In *Muscarello v. United States,* —— U.S. ——, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), the Court was asked "whether the phrase 'carries a firearm' is limited to the carrying of firearms on the person." *Id.* 118 S.Ct. at 1913. Answering in the negative, the Court said that "it also applies to a person who knowingly possesses and conveys firearms in a vehicle...." *Id.* at 1913. In adopting what it called the "generally accepted contemporary meaning" of the term, the Court held that "carry" includes the carrying of a firearm in a vehicle and is not limited to situations where the defendant has the weapon on his person. *See id.* at 1914–16. Basic to the Court's discussion was its recognition that "[n]o one doubts that one who bears arms on his person 'carries a weapon.' " *Id.* at 1915.

▮▮ Prior cases in this Circuit concerning the definition of "carry" have considered the meaning of the term when the gun was found in defendant's automobile rather than on his person. In *United States v. Riascos–Suarez,* 73 F.3d 616 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996), we defined "carry" to mean "immediately available for use—on the defendant or within his or her reach." *Id.* at 623. This definition was later refined to mean that the firearm must also be physically transported by the defendant to the drug transaction. *Taylor,* 102 F.3d at 769; *United States v. Myers,* 102 F.3d 227, 237 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 843 (1997); *Moore,* 76 F.3d at 113.[2] In *Moore,* we said that physical transportation of the gun by the defendant was a necessary factor and that if Congress had intended for accessibility to be the only relevant consideration, it would have provided for a more accurate term than "car-

ry." 76 F.3d at 113. Thereafter, a defendant carried a firearm in violation of § 924(c)(1) when he or she physically transported a gun and had the weapon immediately available for use. *Taylor,* 102 F.3d at 771 (citing *Moore,* 76 F.3d at 113; *Riascos–Suarez,* 73 F.3d at 623). In light of *Muscarello,* the language pertaining to immediate availability of a gun in an automobile no longer describes the test; rather, the proper inquiry is physical transportation. However, because *Muscarello* limited its analysis only to those scenarios when a defendant is found with a firearm in his vehicle, our definition of "carry" as it pertains to a defendant who has a firearm on his person remains intact. *See Muscarello,* 118 S.Ct. at 1913–14. (holding that "carries a firearm" extends to one who knowingly possesses and conveys a firearm in a vehicle); *United States v. Sheppard,* 149 F.3d 458, 463 (6th Cir.1998).

▮ In the present case, the jury instruction permitted the jury to find Hilliard guilty for carrying his weapon if it found that he transported it or if he caused the transportation of it. This instruction has two flaws. First, the jury was instructed on only one factor necessary to determine Hilliard's guilt in carrying his weapon. Although we assume in most situations when a defendant has a weapon on his person that it is by definition immediately accessible, our Circuit precedent instructs us to consider accessibility in addition to one's physical transportation of his weapon. *See Taylor,* 102 F.3d at 771; *Moore,* 76 F.3d at 113. Second, the instruction allowed the jury, in the alternative, to find Hilliard guilty of carrying a firearm if he caused the transportation of his firearm. Although the facts show Hilliard physically transported his firearm himself, we know from *Muscarello* that transporting in the sense of shipping a firearm is not the type of behavior Congress intended to penalize in § 924(c)(1). *See Muscarello,* 118 S.Ct. at 1917. As well, our Circuit precedent in *Taylor* and *Moore* discussed only the culpable nature of physically transporting a firearm and not the defendant's act of causing it to be

---

**2.** In *Moore,* this Court said a definition of "carry" that considers only the availability of a firearm ignores the most obvious meaning of the term which "incorporates the idea of physical transportation: '1: to move while supporting (as in a vehicle or in one's hands or arms).' " 76 F.3d at 113 n. 1 (quoting Webster's Third New International Dictionary 343 (1986)).

transported. *Taylor*, 102 F.3d at 771; *Moore*, 76 F.3d at 113. For these two reasons, the instruction is improper.

### B. Cause and Prejudice [3]

■ Because Hilliard has waited until his collateral attack to raise his objection to the jury instructions, he must show both "cause" why he did not object previously and "actual prejudice" resulting from this error or that he is actually innocent. *Bousley v. United States*, ___ U.S. ___, ___, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998).[4] Hilliard can show sufficient cause for his belated objection. At the time of trial, the instructions were correct, yet after *Bailey*, they are erroneous. *See Anderson*, 89 F.3d at 1315 ("Defendant's failure to object to the jury instructions was understandable given this Circuit's pre-*Bailey* approval of the facilitation or fortress theory of use.").

■ As for "actual prejudice," in *Frady*, the Supreme Court reiterated that in order to obtain collateral relief, the defendant must show that the error in the jury instruction was so prejudicial that it infected the entire trial resulting in a violation of due process; it is not prejudicial merely because it is undesirable or erroneous. *Frady*, 456 U.S. at 169, 102 S.Ct. 1584 (citing *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (Stevens, J., dissenting)). In determining actual prejudice we must determine whether there was sufficient evidence from which a properly instructed jury would have concluded that the defendant was using or carrying his firearm. *Taylor*, 102 F.3d at 771; *United States v. Mauldin*, 109 F.3d 1159, 1161–62 (6th Cir.1997). In *Tay-*

*lor*, the defendant appealed his § 924(c)(1) conviction for using or carrying a gun in his car along with large amounts of cocaine. On appeal this court found that there was insufficient evidence of "use" and, therefore, did not consider that portion of the jury instructions in his appeal. Although we found that the jury was improperly instructed as to the meaning of "carry," we asked whether a properly instructed jury would have concluded that Taylor carried his weapon. *Taylor*, 102 F.3d at 771; *see also Mauldin*, 109 F.3d at 1162.

■ Based upon the foregoing, Hilliard was not prejudiced by the error in the instructions. Although there was error in the "use" and "carry" instruction in that it defined that term as "facilitation," there is sufficient evidence to convict of carrying a firearm.[5] In Hilliard's immediate flight from the scene, he had the gun on his person located under his waistband. Hilliard was therefore carrying his firearm during and in relation to a drug crime, and a properly instructed jury would have concluded the same beyond a reasonable doubt.

### C. Actual Innocence

■ In order to establish actual innocence, Hilliard must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley*, 118 S.Ct. at 1611 (internal quotation marks omitted). This means "factual innocence, not mere legal insufficiency." *Id.* Thus, the focus of our inquiry is limited to whether no reasonable juror would have otherwise concluded that Hilliard

---

**3.** Previous cases from this jurisdiction concerning the appeal of a § 924(c)(1) conviction due to erroneous jury instructions have been direct appeals rather than appeals of § 2255 denials and, therefore, we have applied plain error review. *See Taylor*, 102 F.3d at 769–70; *United States v. Anderson*, 89 F.3d at 1315; *but see Frady*, 456 U.S. at 164–65, 102 S.Ct. 1584 (plain error standard is out of step when prisoner launches a collateral attack because a final judgment commands respect).

**4.** In *Bousley*, petitioner attempted to demonstrate cause for a procedurally defaulted guilty plea by arguing that at the time of trial there was no legal basis on which to argue that his activity

was not criminal under § 924(c)(1). The issue before the Court concerned post-*Bailey* collateral attacks of § 924(c)(1) convictions pursuant to guilty pleas rather than erroneous jury instructions. *Bousley* was limited to the issue before the Court—guilty pleas. *See Bousley*, 118 S.Ct. at 1614 (Stevens, J., concurring in part and dissenting in part); *but see United States v. Ramos*, 147 F.3d 281, 287 (3d Cir.1998), *United States v. Sorrells*, 145 F.3d 744, 750 n. 4 (5th Cir.1998).

**5.** Because we find that a properly instructed jury would have found Hilliard guilty of carrying his firearm, we do not need to address whether he was using it. *See Mauldin*, 109 F.3d at 1161.

carried a firearm when it was tucked within his waistband. For the same reasons discussed above, we think a reasonable juror could conclude only that Hilliard was carrying a firearm.

The decision of the district court is AFFIRMED.