## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0265n.06

Case No. 12-1897

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 09, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DANIEL CORRAL, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| UNITED STATES OF AMERICA, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, COLE, and COOK, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Daniel Corral appeals the district court's order denying his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Corral pleaded guilty in California and Michigan for participating in drug conspiracies that Corral claims to be one and the same. The district court denied Corral's motion to vacate. Thereafter, we granted him a certificate of appealability ("COA") on certain issues. We **AFFIRM** the district court's holdings that Corral procedurally defaulted his claims of defective sentencing and prosecutorial vindictiveness, as well as its finding that Corral was not denied effective assistance of counsel when his trial counsel failed to file a motion for change of venue. We **REVERSE** the district court's decision not to hold an evidentiary hearing, finding that the evidence does not

conclusively show that Corral is entitled to no relief, and **REMAND** for an evidentiary hearing as to his double jeopardy claim and the corresponding ineffective assistance of counsel claim.

## BACKGROUND

### I.       Indictments

Daniel Corral was indicted in both the Central District of California and the Eastern District of Michigan for conspiracy to distribute a controlled substance. Corral argues that both indictments were returned because of his role in an ongoing drug conspiracy called the Black Mafia Family ("BMF"), resulting in the indictment of BMF members across the United States.

On November 1, 2007, Corral was indicted in California for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). A superseding indictment was returned on June 18, 2008, but Corral's charges remained the same. The indictment charged that, beginning on an unknown date "and continuing to on or about November 1, 2007, in Los Angeles County . . . and elsewhere," Corral, his co-defendants, "and others known and unknown to the Grand Jury," conspired to distribute certain amounts of cocaine, crack cocaine, heroin, phencyclidine, and marijuana.

The California indictment alleged overt acts performed by the co-defendants starting in February 2007. According to the indictment, co-defendant Ralph Simms purchased cocaine from Corral. The indictment charged that on July 23, 2007, using coded language in a telephone conversation, Simms told co-defendant Demond Lee that he had given Corral money to purchase cocaine; and that on August 6, 2007, again using coded language in a telephone conversation, Corral told Simms about money he owed cocaine suppliers for a stolen shipment.

Then, on April 9, 2008, Corral was indicted in Michigan for one count of conspiracy to distribute a controlled substance, specifically five kilograms or more of cocaine, in violation of

21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II), and for one count of conspiracy to launder monetary instruments. A superseding indictment was returned on November 14, 2008, but Corral's charges remained the same.

As to the first count for conspiracy to distribute cocaine, the Michigan indictment alleged that from on or about January 1, 1990, through the time of the indictment, Corral, his co-defendants, "and others known and unknown to the Grand Jury, including Terry Lee Flenory and Demetrius Edward Flenory," the alleged leaders of the BMF, conspired to distribute cocaine. The indictment charged that the Flenorys established the drug conspiracy for the purpose of buying and selling cocaine in the Detroit metropolitan area and then extended the organization to other areas of the United States, including Los Angeles, California. The Flenorys then began to refer to their entity as the BMF between 2001 and 2003. According to the indictment, Corral and certain other co-defendants "would facilitate the conspiracy by, *inter alia*, transporting and/or distributing cocaine, loading and unloading cocaine, counting drug-related currency, processing cocaine and brokering cocaine transactions."

In the second count for conspiracy to launder monetary instruments, the Michigan indictment alleged that from on or about January 1990 through the time of the indictment, Corral, his co-defendants, and others known and unknown to the Grand Jury, including the Flenorys, conducted financial transactions involving the proceeds from the unlawful activity of the first count for the purpose of carrying on the conspiracy to distribute cocaine.

## II.    Pleas and Sentencing

In November 2008, Corral agreed to plead guilty in Michigan to both conspiracy to distribute five kilograms or more of cocaine and conspiracy to launder monetary instruments. In exchange for his cooperation in the investigation and prosecution of others involved in the BMF,

the government agreed to seek a downward departure from the guideline imprisonment range of 262-327 months to 131-163 months.

During plea negotiations, Corral's trial counsel claims that he felt there was an overlap in the conspiracies in California and Michigan that violated Corral's constitutional protection against double jeopardy sufficient to form a basis for filing a motion to dismiss the indictment. Counsel says he discussed the matter with the government, but the government said if he litigated the issue, it was not interested in Corral's cooperation. As a result, counsel advised Corral to forgo the motion and enter the agreement with the government because losing the motion and the benefit of the agreement would result in a more severe punishment. Counsel did not do extensive research on the merits of the double jeopardy motion.

After entering his plea agreement but prior to being sentenced in Michigan, Corral pleaded guilty in California[1] and was sentenced there in December 2010 to 46 months' imprisonment and five years' supervised release. Subsequently, in January 2011, the Michigan district court sentenced Corral to 120 months' imprisonment on each count to run concurrently, followed by five years' supervised release. The Michigan and California sentences run concurrently.

### III. Appeals

Corral moved the district court to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, arguing that his detention violated his rights under the Fifth and Sixth Amendments. He argued that his conviction violated the Fifth Amendment because he was twice put in jeopardy for the same offense and the Sixth Amendment because his trial counsel was ineffective for failing to raise a challenge to venue and for failing to raise a double jeopardy

---

[1]The date Corral pleaded guilty in California is unknown because the California proceedings have been sealed.

claim. He further argued that he was entitled to relief because he suffered from prosecutorial vindictiveness and because his sentence was defective. Corral also requested an evidentiary hearing; however, the district court denied the request, finding that the motion could be resolved without a hearing because, quoting the standard in 28 U.S.C. § 2255, "the motion papers, together with the files and record, 'conclusively show that [Corral] is entitled to no relief.'"

The district court denied his petition and declined to grant him a COA. It determined that Corral procedurally defaulted his double jeopardy, defective sentencing, and vindictive prosecution claims because he did not raise them on appeal. However, the court addressed the merits of the claims because it assumed that Corral intended to assert his ineffective assistance of counsel claims as cause to excuse his procedural defaults.

On Corral's appeal to this court, we granted him a COA on the following issues in light of the district court's consideration of them on the merits:

> (1) whether Corral's prosecution for drug conspiracies in both California and Michigan violated the Double Jeopardy Clause; (2) whether Corral was denied effective assistance of trial counsel because counsel failed to file a motion to dismiss the Michigan indictment for drug conspiracy on double jeopardy grounds; (3) whether Corral was denied effective assistance of trial counsel because counsel failed to file a motion for change of venue; (4) whether Corral's sentence for the money laundering conviction is defective because the district court did not orally pronounce a sentence for that conviction; and (5) whether Corral's criminal proceeding was tainted by prosecutorial vindictiveness.

## STANDARD OF REVIEW

"In reviewing the denial of a 28 U.S.C. § 2255 petition, [we] appl[y] a *de novo* standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous." *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998).

## DISCUSSION

### I.     Procedural Default

The government argues that Corral procedurally defaulted his claims for double jeopardy, defective sentencing, and vindictive prosecution because he failed to raise them on direct appeal. Corral argues that ineffective assistance of counsel excuses failure to raise those issues on direct appeal and that consideration of the merits of his defaulted claims is central to the determination of the ineffective assistance of counsel claims.

A federal habeas petitioner who fails to raise claims on direct appeal is required to demonstrate both cause and prejudice to excuse procedural default. *Murray v. Carrier*, 477 U.S. 478, 485 (1986). Ineffective assistance of counsel may establish cause for procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

As noted by the district court, the cause and prejudice inquiry merges with an analysis of the merits of Corral's defaulted claims. Therefore, we must consider the merits of his double jeopardy claim in order to determine whether he has satisfied the cause and prejudice requirement via his ineffective assistance of counsel claims. However, Corral procedurally defaulted his claims for defective sentencing and prosecutorial vindictiveness because his claims of defective sentencing and prosecutorial vindictiveness are unrelated to those claims and he thus failed to demonstrate cause and prejudice. *Carpenter*, 529 U.S. at 451.[2]

### II.     Ineffective Assistance of Counsel for Failure to Move for a Change of Venue

Corral alleges ineffective assistance of counsel based on his trial counsel's failure to move for a change of venue of the count for conspiracy to launder monetary instruments. He

---

[2] The government also argues that Corral waived his right to appeal as part of his plea agreement. However, "[a] guilty plea does not automatically foreclose a double jeopardy challenge." *United States v. Barksdale*, 968 F.2d 1216, 1992 WL 163255, at \*3 (6th Cir. July 14, 1992) (per curiam). Therefore, we will consider his double jeopardy claim on the merits.

claims that the failure to challenge venue falls below the objective standard of reasonableness and that he was prejudiced because, if counsel had challenged venue, the remaining Michigan charge for money laundering would have merged with the California money laundering charges against other defendants, and Corral would likely have received a 46-month sentence.[3]

In order to establish ineffective assistance of counsel, Corral must show counsel's performance was deficient and that it prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the performance inquiry, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In the context of a guilty plea, the prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Stated differently, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).

"[A]ny offense against the United States . . . committed in more than one district[] may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). In conspiracy prosecutions, venue is proper "in any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed." *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984). In the case of conspiracy to distribute drugs, the crimes are continuous and "they are not completed until the drugs reach their final destination, and venue is proper in any district along the way."

---

[3] This argument presupposes that Corral's charge for conspiracy to distribute cocaine would have been dropped if trial counsel had moved to dismiss on double jeopardy grounds. However, whether such motion would have been successful is irrelevant to the analysis of this claim.

*United States v. Williams*, 274 F.3d 1079, 1083-84 (6th Cir. 2001) (quoting *United States v. Turner*, 936 F.2d 221, 226 (6th Cir. 1991)).

We employ a substantial contacts test to determine whether venue is proper, taking into account "the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." *United States v. Williams*, 788 F.2d 1213, 1215 (6th Cir. 1986) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)).

In order to transfer venue, (1) the defendant must state a wish to plead guilty and to waive trial in the district where the indictment is pending, consent to the court's disposing of the case in the transferee district, and file a statement in the transferee district to that effect; and (2) the prosecution in both districts must approve the transfer in writing. FED. R. CRIM. P. 20(a).

Corral is unable to establish a claim for ineffective assistance of counsel based on counsel's failure to move for a change of venue because such motion had no reasonable probability of success. We have held that counsel's failure to make a meritless claim fails both prongs of the *Strickland* test:

> First, counsel cannot be said to be deficient for failing to take a frivolous action, particularly since a frivolous effort takes away from non-frivolous issues. Second, it is evident that failing to make a motion with no chance of success could not possibly prejudice the outcome.

*United States v. Carter*, 355 F.3d 920, 924 (6th Cir. 2004).

For the first prong, Corral cannot show that counsel's performance was deficient. Even if the conspiracy to distribute cocaine charge was dropped in light of a motion to dismiss based on double jeopardy, the money laundering charge still stood. Venue was proper as to this charge because, according to the Michigan indictment, the conspiracy was formed in Michigan and at least some overt acts occurred in Michigan. *See Scaife*, 749 F.2d at 346.

Employing the substantial contacts test also reveals venue in Michigan was proper. *See Williams*, 788 F.2d at 1215. Although Corral argues that his acts took place in California exclusively, it is irrelevant to venue whether the individual defendant entered the district so long as venue is otherwise proper to the conspiracy. *See Scaife*, 749 F.2d at 346. Further, the locus of the effect of the criminal conduct was in Michigan because the BMF was based out of Michigan.

Moreover, Corral's counsel was not deficient because, even if he had moved to transfer venue, there is not a reasonable probability that the motion would have been granted. In order to transfer venue to California for purposes of entering a guilty plea on the money laundering charge, Corral would have had to secure the government's approval. *See* FED. R. CRIM. P. 20(a)(2). This appeal and the purported discussions between his trial counsel and the government do not show that there is a reasonable probability that the government would have agreed to the transfer. Therefore, counsel's performance was not deficient when he failed to make a meritless claim. *Strickland*, 466 U.S. at 687; *Carter*, 355 F.3d at 924.

As to the second prong, Corral cannot show that his defense was prejudiced because the motion, as discussed above, would have been frivolous. *Strickland*, 466 U.S. at 687; *Carter*, 355 F.3d at 924. Because venue was "proper in any district along the way," *Williams*, 274 F.3d at 1084, counsel was not ineffective for failing to make a meritless claim. *Carter*, 355 F.3d at 924.

III. **Double Jeopardy and Ineffective Assistance of Counsel for Failure to Move to Dismiss**

Corral argues that his right to be free from double jeopardy was violated when he was charged, convicted, and sentenced in California and Michigan for his involvement in the same drug conspiracy. He further argues that his trial counsel was ineffective in failing to move to dismiss the count for conspiracy to distribute cocaine on double jeopardy grounds. He also argues that the district court abused its discretion in failing to hold an evidentiary hearing.

### A. Evidentiary Hearing Standard of Review

We review a district court's denial of an evidentiary hearing for abuse of discretion. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). Under § 2255(b), "[u]nless the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief," the district court must grant an evidentiary hearing. We have reiterated that "[a]n evidentiary hearing is *required* unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (emphasis added) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). "[N]o hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

### B. Double Jeopardy

For double jeopardy claims in conspiracy cases, the "ultimate question is whether the evidence shows one agreement or more than one agreement." *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir. 1986). If the conspiracies for which the defendant was convicted "were both part of a single agreement," the second conviction is barred by double jeopardy. *Id.*

"Because of the peculiar characteristics of the offense of conspiracy, which involves an agreement to commit unlawful acts that may continue for an extended period of time and may involve the commission of numerous criminal offenses," *United States v. Gross*, 1 F.3d 1242, 1993 WL 300393, at *2 (6th Cir. Aug. 3, 1993) (per curiam), we apply a totality-of-the-circumstances test and examine five factors:

> (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged
> in the indictments; (4) the overt acts charged by the government or any other
> description of the offenses charged which indicates the nature and scope of the

activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

*United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983). Where several of these factors overlap between the conspiracies, the conclusion follows that the conspiracies are one and the same. *See id.* at 1256-57 ("Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses.").

Application of the test requires burden-shifting among the parties. *In re Grand Jury Proceedings*, 797 F.2d at 1380. If the defendant advances a non-frivolous or prima facie showing that a single conspiracy exists, then the burden shifts to the government, who typically has better access to the evidence, to show separate conspiracies by a preponderance of the evidence. *Id*.

The district court found that all five factors weighed in favor of finding multiple conspiracies. We agree that the persons acting as co-conspirators factor weighs in favor of finding multiple conspiracies. We have found that where only the defendant was in both indictments and only three individuals were common to the investigations, the overlap was "minuscule" and thus did not indicate that a single conspiracy existed. *Sinito*, 723 F.2d at 1258. Here, numerous co-defendants were indicted in California and Michigan, but only Corral and Martez Byrth were named in both. Therefore, the overlap is minuscule when compared to the overall list of co-defendants and does not indicate that there was only one conspiracy. As such, the district court did not clearly err in finding that the persons acting as co-conspirators factor weighed in favor of finding multiple conspiracies. *Hilliard*, 157 F.3d at 447.

We also agree that the factor for places where the events took place does not indicate a single conspiracy. The California indictment charged that Corral and his co-defendants conspired in California and does not mention Michigan. The Michigan indictment charged that the Flenorys established the BMF in Michigan, but then expanded the BMF across the country,

including California. Although California is common to both indictments, the majority of the overt acts alleged in the Michigan indictment took place in different locations, and it does not specify where Corral participated in illegal activities. Therefore, the district court did not clearly err in finding that the overt acts took place in different locations and thus weighed in favor of finding multiple conspiracies. *Hilliard*, 157 F.3d at 447.

However, we find that the remaining three factors indicate that the Michigan and California indictments may have charged the same conspiracy, or at least that there is not adequate evidence in the record to conclude that there were multiple conspiracies, thus requiring us to remand for an evidentiary hearing.

First, the statutory offenses charged factor weighs heavily in favor of finding a single conspiracy. When "precisely the same statutory offenses" are charged, this factor tends to weigh in favor of a single conspiracy. *In re Grand Jury Proceedings*, 797 F.2d at 1382. The California and Michigan indictments charged precisely the same statutory offenses: 21 U.S.C. §§ 846 and 841(a)(1). The charges only differentiate between § 841(b)(1)(A) subsections, which accounts for the different controlled substances involved in each indictment.

Although the identical charging statutes indicate one conspiracy, we must also look to the underlying offenses. *Sinito*, 723 F.2d at 1258. In *Sinito*, we examined two indictments brought under 18 U.S.C. § 1962(c)&(d), the first involving an enterprise for illegal loansharking and the second involving an enterprise organized to commit murder and violence to facilitate narcotics trafficking. *Id*. We held that, even though the indictments charged violations of the same statute, the underlying offenses were so different that the statutory offenses charged factor weighed in favor of finding multiple conspiracies. *Id*. Unlike in *Sinito*, the underlying offenses in both the

California and Michigan indictments were conspiracy to traffic in controlled substances—multiple types of drugs, including cocaine, in California, and only cocaine in Michigan.[4]

Even if we accepted the district court's conclusion that the statutory offenses were not the same because "clearly different facts [] need to be proven in order to establish conspiracy to distribute one drug, as opposed to a conspiracy to distribute several drugs," this factor still weighs in favor of one conspiracy because the California indictment subsumes the Michigan indictment. In California, the government had to prove its case as to multiple controlled substances, including cocaine, while in Michigan it only had to prove its case as to cocaine.

Therefore, the district court's factual findings were clearly erroneous because there are not, as the court found, "clearly different facts that need to be proven" between the California and Michigan's indictments. *Hilliard*, 157 F.3d at 447. Both indictments require proof of the same elements, using the same facts, and only varying as to the type and amount of controlled substance involved.

Second, the overt acts charged by the government factor weighs in favor of finding a single conspiracy. We examine "whether the particular acts alleged in the indictment are part of a larger, unified conspiracy for which the defendant has already been [convicted]." *Sinito*, 723

---

[4] Corral's plea agreement in Michigan lends further support to our finding that the underlying offenses are the same and thus that the statutory offenses charged factor weighs in favor of finding a single conspiracy. In his plea agreement, the government listed the elements it would have to prove at trial for conspiracy to distribute a *controlled substance*:
  i. The defendant conspired with another or others;
  ii. to knowingly and intentionally possess with intent to distribute and to distribute a *controlled substance*, specifically, cocaine;
  iii. at the time of that possession and distribution, defendant knew that he and or others possessed a *controlled substance*; and
  iv. the defendant, aided and abetted by others, intended to distribute the cocaine.
(emphasis added). The elements of the offense apply generally to all controlled substances listed in § 841(b)(1)(A), not just to cocaine, as made clear by the government's phrasing of the elements and by the structure of § 841 itself.

F.2d at 1258.[5] For example, in *Sinito*, we held that the overt acts were not part of a larger, unified conspiracy because one indictment charged murder, gambling, drug trafficking and obstruction of justice, while the other charged loansharking. *Id*.

A unified conspiracy requires "assent of its members to contribute to a common enterprise." *United States v. Kelley*, 849 F.2d 999, 1003 (6th Cir. 1988). "Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership." *Id*. (internal quotation marks and citation omitted). Evidence of the "unity essential to a conspiracy," *id.*, can be found in the common goal of the conspirators and the purpose served by the co-conspirators' activities. *See United States v. Maddox*, 944 F.2d 1223, 1232 (6th Cir. 1991).

The acts alleged in both indictments all contributed to a single, unified conspiracy to distribute a controlled substance. According to the California indictment, Corral sold cocaine to at least one co-defendant and Corral indicated that he received his cocaine from suppliers. According to the Michigan indictment, which did not specify Corral's individual involvement, Corral and his co-defendants participated in activities related to cocaine distribution, including brokering cocaine transactions, in multiple locations across the country, such as California. These overt acts are not only the same, but also contribute to a unified conspiracy. Unlike in *Sinito*, where the overt acts between indictments were not similar or even arguably related, the overt acts in these indictments show a common goal and purpose: to conspire to distribute a controlled substance.

---

[5] This is the sound approach because "simply comparing different overt acts in the indictment does not accurately determine the issue" and "[s]uch an inquiry would . . . 'permit the government arbitrarily to split unitary . . . conspiracies and to initiate as many prosecutions.'" *Sinito*, 723 F.2d at 1258 (quoting *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978)).

Therefore, the district court's factual findings were clearly erroneous because the overt acts were not, as the court asserted, "clearly different." *Hilliard*, 157 F.3d at 447. The overt acts charged in Michigan and California were all related to Corral's purpose of distributing a controlled substance, which was the common goal of his co-conspirators.

Third, the time factor arguably weighs in favor of finding a single conspiracy, or is at least indicative of the need for an evidentiary hearing. Overlap in time periods alleged is not necessarily indicative of one conspiracy because time frames and personnel can overlap in separate criminal agreements. *Sinito*, 723 F.2d at 1257. However, "a single agreement to commit an offense does not become several conspiracies [just] because it continues over a period of time." *Braverman v. United States*, 317 U.S. 49, 52 (1942).

The California indictment charged that Corral was involved in the conspiracy starting on an unknown date through November 6, 2007, and alleged overt acts starting in February 2007. The Michigan indictment more specifically charged that the defendants were involved in the BMF conspiracy from around 1990 to 2008. The indictments, then, overlap in time by at least nine months. Therefore, the district court's findings were clearly erroneous because it summarily held that the "indictments charged offenses that spanned different times" and wholly ignored the nine-month overlap. *Hilliard*, 157 F.3d at 447.

 Although we have previously held that an overlap in time of ten months was not indicative of a single conspiracy, *see Sinito*, 723 F.2d at 1257, on this record we cannot conclusively determine that the overlap was limited to the known nine-month window. The government in California failed to indicate when the conspiracy began. "[B]ecause the government typically has better access to evidence," *In re Grand Jury Proceedings*, 797 F.2d at

1380, an evidentiary hearing would have presumably illuminated when the California conspiracy started and confirmed the extent of the temporal overlap between the two indictments.

Therefore, because several factors are the same between the Michigan and California conspiracies, one could reasonably conclude that the conspiracies are one and the same. *See Sinito*, 723 F.2d at 1256-57. Corral has advanced a prima facie showing that a single conspiracy exists, and the government has failed to show by a preponderance of the evidence that the Michigan and California conspiracies are distinct. *In re Grand Jury Proceedings*, 797 F.2d at 1380.

The district court abused its discretion in denying Corral's request for an evidentiary hearing. *Witham*, 355 F.3d at 504. As detailed above, the motions, files, and record do not conclusively show that Corral is entitled to no relief; therefore, we reverse the district court's denial of Corral's request and hold that the district court was required to hold an evidentiary hearing. 28 U.S.C. § 2255(b); *Arredondo*, 178 F.3d at 782. Consequently, we remand for an evidentiary hearing on Corral's double jeopardy claim.

### C. Ineffective Assistance of Counsel for Failure to Move to Dismiss

Because we are remanding Corral's double jeopardy claim for an evidentiary hearing, we need not reach Corral's claim that his trial counsel was ineffective for failing to move to dismiss the count for conspiracy to distribute cocaine on double jeopardy grounds. We direct the district court to consider the ineffective assistance of counsel claim if, on remand, the court finds that double jeopardy attached to the Michigan indictment.

### CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's holdings that Corral procedurally defaulted his claims of defective sentencing and prosecutorial vindictiveness, as

well as its finding that Corral was not denied effective assistance of counsel when his trial counsel failed to file a motion for change of venue. We **REVERSE** the district court's decision not to hold an evidentiary hearing, finding that the evidence does not conclusively show that Corral is entitled to no relief, and **REMAND** for an evidentiary hearing as to his double jeopardy claim and the corresponding ineffective assistance of counsel claim.