NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0173n.06
Filed: March 7, 2006
No. 04-6344

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CARLOS DANIELS, | ) | THE WESTERN DISTRICT OF |
| | ) | T E N N E S S E E   W E S T E R N |
| Defendant/Appellant. | ) | DIVISION |

Before: COOK, CLAY, Circuit Judges; COOK, District Judge.[*]

COOK, District Judge.  Appellant, Carlos Daniels, appeals his conviction of being a felon in possession of a firearm, contending, in essence, that the evidence was insufficient to support the verdict.  We disagree and affirm the ruling of the district court.

I.

On  November 25, 2003, a federal grand jury in the Western District of Tennessee returned an indictment which charged Daniels with having committed a criminal act in violation of 18 U.S.C. § 922(g). During the trial, Police Officer William Horn testified that, while on patrol in Memphis, Tennessee, he and his partner, Officer Jerrell Lightsey, "saw six or seven individuals loitering . . . in the street and on the sidewalk [around 3:00 a.m]."[1]  (J.A. at 17.)   Horn observed

---

[*]The Honorable Julian Abele Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]This section of Memphis was described by Horn as being a "high drug trafficking, high crime area, lost (sic) of prostitution, hand-to-hand drug sales, lots of burglaries, just various types of criminal activity."  (J.A. at 17).

Carlos Daniels, along with several other unidentified males "standing on the sidewalk at the corner of Manassas and Mosby on the northwest corner." (J.A. at 18.) Everyone, with the exception of Daniels, began to immediately disperse as the officers approached them in their patrol car. The officers, after getting out of their vehicle, instructed the men to stop. However, Daniels did not respond, preferring to continue his walk in a westerly direction from the Manassas and Moby area. Horn followed Daniels "along [a] little grassy edge," and testified that he saw him "pull[] something with his right hand and [throw] it to the ground, it was silver metallic, it appeared to have square edges, possibly a handgun or something to that effect." (J.A. at 23-24.) Daniels was eventually detained by Lightsey, who searched him for weapons, but none were found. Thereafter, Horn searched the general area in an effort to locate the object that had been dropped by Daniels. His search effort proved to be unsuccessful. Shortly afterward, a fellow police officer, Kevin Clark, who had arrived on the scene with two other law enforcement officers, found a .25 caliber pistol near the same grassy area that had been searched by Horn.[2] Daniels was thereafter placed under arrest. On July 7, 2004, a jury convicted Daniels of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

II.

According to the presentence investigation report that had been prepared in Daniels' case, his base offense level was 24, inasmuch as he had been convicted of two prior violent felonies. The Probation Office, having concluded that Daniels should be assigned to a criminal offense level of 10 which, in turn, would place him in a criminal history category of V, recommended the

---

[2]A defense witness, James Walker, testified that, despite having been in the Mosby and Manassas area during the evening hours of April 11, 2003, he had not seen anyone throw a gun down to the ground. In fact, Walker replied, that Daniels "[d]idn't have enough time because [the officers] jumped out with their guns on us, told us don't run, don't nobody run." (J.A. at 73.) Daniels exercised his constitutional right not to testify on his own behalf during the trial.

imposition of a sentence of 92 to 115 months in accordance with the Sentencing Guidelines.

During the sentencing hearing on October 21, 2004, Daniels objected, under *Blakely v. Washington*, 542 U.S. 296 (2004), to the imposition of the recommended sentence range that had been calculated.[3] He argued that the recommended guideline range was too high for the crime committed. At the conclusion of the hearing, the district court judge indicated that the court would not have followed the Sentencing Guidelines if they had not been mandatory:

> Let me say, first of all, that based on the status of the law in the Sixth Circuit this court is bound by the sentencing guidelines. And the sentencing guidelines were implemented to promote uniform sentencing and unless there is some factor that takes the case out of the heartlands, the court should sentence within the guidelines. There has been nothing in this case that would take it outside of the heartland of cases that the sentencing commission considered in promulgating the guidelines and so I will be imposing a guideline sentence within the guideline range.
>
> . . . .
>
> In response to the counsel, defense counsel's request let me say that if this case were one not bound by the guidelines, the court would be . . . inclined rather to impose a sentence in the range of 60 months were there no guidelines and this court was not constrained by the guidelines. However, I have found that the guidelines do apply and because the guidelines do apply the court will impose a sentence within the guidelines at the low end of the guidelines of 92 months.
>
> . . . .
>
> As I said before, I find that the guidelines do compel me to impose a sentence at the low end, if they weren't here, I would give you a different sentence . . . .

(J.A. at 90-92). Thereafter, the district court placed Daniels in the custody of the Bureau of Prisons for a period of ninety-two months followed by two years of supervised release.

### III.

---

[3]At the time of Daniels' sentencing hearing, *United States v. Booker*, 543 U.S. 220 (2005), had not been resolved by the Supreme Court.

In 1986, this Court declared that a "defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (quoting *United States v. Soto*, 716 F.2d 989, 991 (2nd Cir. 1983)). In reviewing claims of insufficient evidence on appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virgnia*, 443 U.S. 307, 319 (1979). Thus, "we will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991). "[T]his rule applies whether the evidence is direct or wholly circumstantial." *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984).

In *United States v. Green*, we defined substantial evidence as being "more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." 548 F.2d 1261, 1266 (6th Cir. 1977) (internal quotation marks and citation omitted). However, "[i]t is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *Stone*, 748 F.2d at 363. Finally, "[i]n cases in which we assess the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994).

IV.

Section § 922(g) of Title 18 of the United States Code, which is the criminal statute that formed the basis for Daniels' arrest and conviction, reads in pertinent part as follows:

> It shall be unlawful for any person–
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
> . . . .

4

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce[.]

The elements of this offense are "(1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) that the firearm had traveled in or affected interstate commerce." *United States v. Moreno*, 933 F.2d 362, 372 n.1 (6th Cir. 1991) (internal quotation marks and citation omitted). Proof of actual or constructive possession is sufficient to sustain the verdict. *See id.* at 373. Here, on appeal, Daniels only challenges the second element (i.e., possession).

V.

In this case, and when viewing all reasonable inferences in favor of the Government, there is "substantial and competent" evidence to support a reasonable inference that Daniels possessed a firearm prior to dropping it on the ground near the scene of his arrest. Although the detaining officers did not find anything in the debris pile that matched the color or the physical dimensions of a gun, there is testimony from Clark who found a weapon which matched Horn's description of the object that had been dropped by Daniels. Contrary to Daniels' contention, the evidence presented at trial does not "require[] a leap of faith in order to support [his] conviction." *See United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (overturning defendant's conviction based on insufficiency of evidence). Accordingly, we find that Daniels' conviction is supported by "substantial evidence." *See United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (finding "substantial evidence" on facts similar to the instant case).

Nonetheless, Daniels argues that Horn's testimony, even if viewed as being credible, does not support the Government's theory of the case.[4] It is Daniels' position that "Horn testified that

---

[4]The Government characterizes Daniels' argument as "merely a challenge to [the witness'] credibility, packaged as an insufficiency of the evidence claim." Appellee's Br. at 8

[Daniels] was walking westbound on the north side of the street and that he just dropped an object with his right hand." Appellant's Br. at 20. According to Daniels, "[t]his would have left the purported gun on the north side of the sidewalk instead of the south side of the sidewalk in the green area between the street and the sidewalk where the gun was found." *Id.*

A couple of observations run counter to Daniels' argument. First and foremost, the facts that were developed during the trial do not necessarily support Daniels' version of the events. Horn testified that Daniels was walking westbound along "[a] little grassy edge." According to Horn, Daniels removed an object with his right hand, and then dropped it "in a debris pile approximately where the truck is." (J.A. at 24.) Horn subsequently clarified his testimony when he asserted that "[Daniels] actually dropped the gun near the wheel well of the vehicle." (J.A. at 46.)

Moreover, since the jury had the advantage of viewing photographs of the scene, it had an opportunity to assess the scene of the arrest and make an informed judgment about the Government's theory of the case. *See Meers & Dayton v. Childers*, 228 F. 640, 643 (6th Cir. 1916) ("[T]he jury has the advantage of seeing and hearing the witnesses; . . . a reviewing court cannot disregard such . . . advantage as this."). Thus, when viewing all reasonable inferences in favor of the Government in connection with this motion, Horn's testimony supports the Government's theory of the case because it shows that Daniels was capable of avoiding dropping the gun onto the sidewalk.

Finally, although a witness for the defense, James Walker, testified that he "had not seen anyone throw a gun down to the ground," it was the proper role of the jury to determine the believability of his testimony. *See id.* The jury chose not to give his testimony much credibility.

_____

(alteration in original). However, he has not challenged any of the witnesses' testimony. Rather, Daniels has attacked the Government's theory of the case in light of Horn's testimony.

6

Therefore, in light of our limited review, the Court upholds the decision by the district court.

## VI.

In *United States v. Booker*, the Supreme Court effectively eliminated the mandatory nature of the Federal Sentencing Guidelines. 543 U.S. 220 (2005). In *United States v. Barnett*, we vacated the defendant's sentence and remanded his case for resentencing "in light of the fact that the district court judge was sentencing the defendant as if the guidelines were mandatory." 398 F.3d 516, 525 (6th Cir. 2005) (quotation marks omitted).[5] Here, the district court judge clearly expressed a belief that a lesser sentence would have been rendered if he had not felt obligated to comply with the Sentencing Guidelines. Accordingly, and in light of *Booker*, the Court remands Daniels' sentence in order to allow the district court judge to impose a sentence that is consistent with *Booker*.[6]

## VII.

Based on the foregoing analysis, the Court rejects Daniels' contention that his conviction was based on an insufficient amount of evidence. However, in light of *Booker*, the Court vacates his sentence and remands this case to the district court for a resentencing that will be consistent with *United States v. Booker*.

---

[5]Like Daniels, the defendant in *Barnett* was sentenced prior to *Booker*. *See Booker*, 543 U.S. at 268 ("[T]oday's holding [applies] . . . to all cases on direct review."); *United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005) ("We may review Webb's [case] . . . based on *Booker* despite the fact that the Supreme Court did not issue its decision in *Booker* until after the district court sentenced Webb.").

[6]The Government agrees that Daniels' sentence of ninety-two months of incarceration followed by two years of supervised release should be remanded to the district court in light of *Booker*.