NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0555n.06

No. 10-6174

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 30, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| DERICO WILLIAMSON | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: CLAY and KETHLEDGE, Circuit Judges, DOW, District Judge.[*]

DOW, District Judge. A jury convicted DeRico Williamson of possessing a firearm as a

felon in violation of 18 U.S.C. § 922(g). Williamson appeals that conviction, arguing that (1) there

was insufficient evidence to convict him; (2) the district court erred in allowing certain testimony

over his objections; and (3) the prosecutors committed a discovery violation. We affirm.

I.

On August 6, 2008, officers with the Memphis Police Department observed Williamson

engage in a hand-to-hand drug transaction with another man. As officers approached the two men,

Williamson fled, ducking into an apartment about ten or fifteen feet away. As he pursued

Williamson, one of the officers, Detective Star Handley, saw that Williamson was holding something

---

[*]The Honorable Robert M. Dow Jr., United States District Judge for the Northern District of
Illinois, sitting by designation.

in his left hand and clutching his right side. As Williamson entered the apartment, he threw down two baggies of marijuana with his left hand, ran through the living room, and then continued up a flight of stairs. Detective Handley slowed down to retrieve the baggies, and then paused as Williamson was reaching the top of the stairs. At that point, Williamson took a black object from his right side and threw it, making a loud "thud," and then hid in a bathroom at the top of the stairs. Upon searching the upstairs of the apartment, Detective Handley found a loaded black pistol in an open closet of a child's bedroom, which was the only room with an open door at the top of the stairs. Williamson was apprehended in the bathroom and arrested.

A federal grand jury indicted Williamson on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). After the district court dismissed the marijuana count on the government's motion, the case proceeded to trial on the felon-in-possession count.

During discovery, Williamson's counsel requested from the government copies of any written statements that Williamson made while in custody. In its discovery letter, the government stated that it "enclosed a copy of the arrest ticket and affidavit of complaint which reflect any oral statements made by your client," and included in its list of physical evidence a "Rights Waiver Form." The letter also made clear that Williamson's counsel could inspect the originals and/or make copies of the evidence if she desired.

After Williamson was arrested and read his rights, he completed the Rights Waiver Form that was standard in the district. Williamson signed the front page of the form, indicating that he waived his rights and that he wished to answer questions at that time. In his answers recorded on the back

of the form, Williamson denied possessing the pistol, denied having any knowledge about the pistol, and answered, "yes, by you" in response to the question, "Have you been treated fairly?" In its discovery package, the government included a copy of the front side of this rights waiver form, but neglected to copy and provide defense counsel with the back side, which contained Williamson's written statement.

At trial, the government called several officers, including Detective Handley. Detective Handley testified that during the chase, he saw Williamson throw a black object with his right hand, and that when it landed, it made "a thum[p]ing sound." Although Detective Handley admitted that he could not identify the object that Williamson threw, he stated that the location of the black pistol—an open closet in a bedroom just to the right of the top of the stairs—was consistent with the throwing motion that he saw Williamson make. Detective Handley also testified that there were no obstructions between where Williamson was standing at the top of the stairs and the closet where he found the pistol. The government also called a fingerprint expert, who testified that she tested the pistol in question for fingerprints, and that Williamson's prints were not on it.

Williamson's primary witness was his sister, Kanisha Williamson. Kanisha testified that she used to live at the apartment where Williamson was arrested, and that she was present during the arrest. According to Kanisha, the pistol in question belonged to her on-again, off-again boyfriend, Carlos Clear, who had been staying with her at the time of Williamson's arrest. Kanisha testified that Detective Handley found the pistol in a plastic storage bin that was filled with Clear's clothing, not in the closet on the floor. Kanisha also testified that when the officers arrested her brother, "they handcuffed him and pulled him by his dreads down the steps."

On cross examination, Kanisha made numerous incorrect statements about the number and location of closets within the bedroom at the top of the stairs. She also testified that she did not tell anyone—including Williamson's counsel or the government agents who interviewed her—that the pistol belonged to Clear until a month before trial, when, at Williamson's request, she wrote a statement to that effect and sent it to Williamson in prison. She also admitted that at the time of trial, Clear was deceased and could not contradict her testimony that the pistol belonged to Clear, and not her brother.

The government called two witnesses in rebuttal. The government first asked Officer Brandon Champagne, the case agent on Williamson's case, whether, based on his observation of the scene, it would be possible to throw a gun from the hallway at the top of the stairs to the inside of the closet where the gun was found. Williamson's counsel objected to the basis of Officer Champagne's knowledge, but the Court overruled the objection, concluding that the testimony was admissible under Federal Rule of Evidence 701. Officer Champagne then testified that, "In my opinion . . . a gun could have been very easily tossed into this closet."

The government then recalled Detective Handley to rebut Kanisha's testimony that the officers had pulled Williamson down the stairs by his hair. To do so, the government sought to show Detective Handley the back page of the rights waiver form where Williamson indicated that he had been treated fairly by the police. Williamson's counsel objected, arguing that the government had not disclosed this document or informed her of Williamson's statement prior to Detective Handley's rebuttal testimony. Williamson's counsel admitted that the rights waiver form was the "usual" form, but argued that during discovery, the government had only produced a copy of the front of the form.

Williamson's counsel was given an opportunity to read the back of the form, stated that she did not "necessarily object" to the use of the document itself, but then objected that Williamson's statement was not relevant to whether there was a scuffle between Williamson and the arresting officers. The district court overruled the objection, and allowed the government to use the statement only for the purpose of asking Detective Handley what Williamson's answer was when he was asked if he was treated fairly. Detective Handley replied, "[O]n the rear page, he was asked have you been treated fairly, and he answered yes and then initialed next to it." The document was not admitted into evidence. The jury convicted Williamson of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Williamson then moved for a new trial, arguing that the government's failure to turn over the back page of the rights waiver form violated the rule articulated in *Brady v. Maryland,* 373 U.S. 83 (1963). The district court denied Williamson's motion, and sentenced him to 120 months in prison. This appeal followed.

II.

A.

Williamson first argues that the evidence presented at trial was insufficient to convict him of being a felon in possession of a firearm. In determining whether the evidence is sufficient to support a criminal conviction, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010) (internal quotations, citations, and emphasis omitted). Where, as here, the defendant failed to renew

his Rule 29 motion for acquittal at the close of all the evidence, our review is limited to a determination of whether there was a "manifest miscarriage of justice." *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008) (internal quotations and citations omitted). Such a miscarriage of justice only occurs if "the record is devoid of evidence pointing to guilt." *Id.*

The government presented ample evidence at trial to sustain the jury's verdict. Detective Handley testified that he saw Williamson clutching an object to his right side as he ran from the officers. He then saw Williamson pull a black object from his right side, and throw it, making a thud. When the officers arrested Williamson, they found a black, loaded pistol in an open closet in a child's room, a few feet away from where he had thrown the black object. Detective Handley testified that the location of the pistol was consistent with the direction that Williamson had thrown the object, and that there were no obstructions between where Williamson was standing at the top of the stairwell and the closet where the pistol was found. Finally, Officer Champagne testified that "a gun could have been very easily tossed into [the] closet" from the top of the stairway.

Williamson argues that the physical evidence contradicts the officers' testimony; that it was unlikely, if not impossible, to throw a pistol from the hallway at the top of the stairs, around the closet door, and into the closet, especially if it made only one "thump." The jury, however, "had the advantage of viewing photographs of the scene, it had the opportunity to assess the scene of the arrest and make an informed judgment about the Government's theory of the case." *United States v. Daniels*, 170 F. App'x 409, 413 (6th Cir. 2006) (internal citation omitted). Because a rational trier of fact could have come to the conclusion that Williamson possessed the pistol that Detective Handley found in the closet, we conclude that the evidence was sufficient to support his conviction.

*See*, *e.g., United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (rejecting the defendant's sufficiency challenge where an officer testified that he saw the defendant holding a long black object that looked like a shotgun, saw the defendant throw the object to the ground as he began running and, upon searching the scene, another officer found a black rifle in the same area); *United States v. Moore*, 208 F.3d 411, 413 (2d Cir. 2000) (finding sufficient evidence of possession where officers testified that they saw the defendant moments earlier with a large black and silver handgun and, after a brief chase, found that same gun in a closet a few feet from where they arrested the defendant); *Daniels*, 170 F. App'x at 412–13 (concluding that there was sufficient evidence to support a felon-in-possession conviction where an officer testified that he observed the defendant pull at something silver with his right hand and throw it to the ground and, shortly thereafter, another officer found a pistol in that same area). Accordingly, Williamson's sufficiency argument is without merit.

B.

Williamson next argues that the district court should have excluded Officer Champagne's testimony because it was improper lay opinion testimony. We review a district court's evidentiary rulings for an abuse of discretion, and will reverse "only where the district court's erroneous admission of evidence affects a substantial right of the party." *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007) (citing Fed. R. Evid. 103(a)).

Pursuant to Federal Rule of Evidence 701, a lay witness may provide opinion testimony if it is (1) rationally based on his or her perception; (2) helpful to clearly understanding his or her testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge that lies within the scope of Federal Rule of Evidence 702. Williamson does

not contest the fact that Officer Champagne's testimony was helpful to determining whether Williamson could have thrown the pistol from the stairway to where it was found in the open closet. Instead, Williamson argues that Officer Champagne's opinion that "a gun could have been very easily tossed" from the top of the stairs to the inside of the closet was not rationally based on his perception and was based on scientific, technical, or other specialized knowledge.

We disagree. First, Officer Champagne testified that about a week before the trial began, he went to the apartment where officers arrested Williamson, studied the area around the stairway and the closet, and took pictures of the scene. His opinion testimony was based on what he rationally perceived at the apartment. Notably, aside from the use of the phrase "very easily," Officer Champagne's testimony was no different from the testimony of Detective Handley, who stated that there were no obstacles between the stairway and where he found the pistol in the closet.

Furthermore, the fact that Officer Champagne used the phrase "very easily" does not take his lay opinion into the realm of probability and physics, as Williamson argues. Lay testimony is testimony that "results from a process of reasoning familiar in everday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *White*, 492 F.3d at 401 (internal citations and quotations omitted). Officer Champagne's testimony that it would be easy to throw an object from one place to another "results from a process of reasoning familiar in everyday life." *Id.* It is an observation that anyone could make after studying the rooms at issue. Officer Champagne's lay opinion was not technical, nor did it involve any specialized skill or expertise. He was merely asserting that, based on the layout of the apartment,

which he had personally observed, he believed that it could be done, and done without much effort. His opinion was proper lay testimony.

In any event, even if we were to determine that the district court erred in allowing Officer Champagne to testify as to his opinion, any error did not affect Williamson's substantial rights. In addition to Officer Champagne's testimony, the jury also heard testimony from Detective Handley that he found the pistol in a location that was consistent with the direction that Williamson had thrown the black object and that there were no obstructions between where Williamson was standing at the top of the stairwell and the inside of the closet. That evidence was sufficient for the jury to conclude that it was possible for Williamson to throw the pistol from the hallway at the top of the stairs to the inside of the closet. Accordingly, we reject Williamson's challenge to Officer Champagne's testimony.

## C.

Finally, Williamson challenges the government's use at trial of the back side of the rights waiver form at trial. First, Williamson contends that the district court erred when it allowed the government to introduce Williamson's statement about how he was treated to rebut Kanisha's testimony that officers dragged Williamson down the stairs by his hair. Williamson argues (1) that how Williamson was treated by arresting officers is not relevant to whether he possessed the firearm, and (2) that the actual statement that Williamson made, indicating that he was treated fairly by the processing officer at the police station, does not rebut Kanisha's testimony that the arresting officers mistreated her brother.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Because a timely objection was made on the basis of relevance, we review the district court's ruling using the abuse-of-discretion standard." *United States v. Newsom*, 452 F.3d 593, 601 (6th Cir. 2006). An abuse of discretion exists "when the ruling court is firmly convinced that a mistake has been made." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998).

As an initial matter, we agree with Williamson that how the arresting officers treated him does not make it more or less probable that he possessed the pistol found at the scene. But once the defense introduced Kanisha's testimony that the officers pulled Williamson down the stairs by his hair, the government was well within its rights to rebut that testimony with the statement that Williamson made immediately after his arrest. After Kanisha testified as to Williamson's treatment, Williamson's statement was relevant, both to rebut that specific statement and to raise doubts about Kanisha's general credibility.

As to Williamson's argument that his full statement, "yes, by you," is not actually impeaching because the "by you" refers to the officers interrogating him, not to the arresting officers, Williamson had the opportunity to make his point during cross examination. By that time, Williamson's counsel had been given an opportunity to review the back page of the rights waiver form, and counsel was aware of the full statement that Williamson made at the police station. Indeed, the record reflects that she sought to clarify who Williamson believed had treated him fairly when she asked Detective Handley which officer's name was on the rights waiver form.

Moreover, even assuming that the district court abused its discretion when it allowed the testimony at issue, any error was harmless. *See Newsom*, 452 F.3d at 602. As Williamson admits, how the arresting officers took him down the stairs after he was arrested, or whether he fought with the officers, is not relevant to the ultimate issue in the case—whether he possessed the pistol. Further, if the jurors chose to believe the officers' testimony over the testimony of Kanisha, it was likely because they discredited her testimony for other reasons—like the fact that she confused the layout and number of closets in her child's bedroom, or the fact that she failed to tell anyone, including government agents, that the gun belonged to her boyfriend until Williamson asked her to, and Clear had passed away and thus could not dispute it.

Nor does the government's failure to disclose before trial the back page of the rights waiver form require reversal in this case. Williamson argues that the government's failure to copy and disclose the back page of the form was a violation of its obligation under Federal Rule of Criminal Procedure 16.[1] In relevant part, Rule 16 requires that, upon a defendant's request, the government

---

[1]At oral argument, Williamson's counsel withdrew her argument that the government's failure to disclose the back page of the rights waiver form violated *Brady v. Maryland*, 373 U.S. 83 (1963), and for good reason. To establish a claim under *Brady*, Williamson must prove that "the Government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). The district court properly concluded when ruling on Williamson's motion for a new trial that Williamson's own statement did not constitute *Brady* material because he knew about the statement. *See Henness v. Bagley*, 644 F.3d 308, 325 (6th Cir. 2011) (finding no *Brady* violation where the defendant "already knew of his own contact with the police at the time of trial"); *United States v. Edgecombe*, 107 F. App'x 532, 541 (6th Cir. 2004) ("The government's *Brady* disclosure obligation does not apply when the defendant knew or should have known the essential facts permitting him to take advantage of the exculpatory information at issue."). Even assuming that the government negligently suppressed evidence that was favorable to Williamson, however, he cannot show that the suppressed evidence was material. *See United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976)

disclose to the defendant, and make available for inspection, copying, or photographing: (1) any relevant written statements made by the defendant if the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists; and (2) the portion of "any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. 16(a)(1)(B)(i)-(ii).  Because Williamson did not raise this issue below, we review it only for plain error.  *United States v. Faulkenberry*, 614 F.3d 573, 590 (6th Cir. 2010); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Here, there is no doubt that the government disclosed that there was a rights waiver form in evidence in this case, that Williamson's counsel knew that the typical rights waiver form contained both a front and back side, and that the government made the entire form available for inspection or copying.  The question is whether, in light of those facts, the government's negligence in copying the form itself—and providing incomplete and potentially misleading information in its discovery letter—is a violation of Rule 16.  We need not definitively resolve that question, however, because any violation of Rule 16 did not affect Williamson's substantial rights.  *See United States v. Carradine*, 621 F.3d 575, 579 (6th Cir. 2010) (stating that we may correct an error not raised at trial only where the appellant demonstrates that the error affected the appellant's substantial rights, which

(holding that the government's obligations under *Brady* do not extend to evidence that affects a defendant's ability to prepare for trial).

in the ordinary case means it affected the outcome of the district court proceedings) (internal citation omitted).

Williamson argues that if his counsel had the full rights waiver form before trial, the outcome of the trial would have been altered for two reasons. First, he contends that he would have been able to rebut the government's contention that, shortly before trial, he talked his sister into lying on his behalf about whose gun was in her apartment. With the back side of the rights waiver form itself—not just his bald assertion—Williamson claims he could have demonstrated that it was his position all along that he had not possessed the pistol. Second, Williamson argues that if his counsel had his written statement before trial, she may have prepared differently, and may even have encouraged him to testify at trial.

Williamson's arguments are flawed for a number of reasons, chief among them the fact that it was Williamson himself who made the statements that were negligently withheld. Further, it was always Williamson's position that he had never possessed the pistol found in the apartment—the jury knew that based on his "not guilty" plea—and all that the back side of the rights waiver form only corroborates his assertion. Finally, Williamson's contention that he would have prepared for trial differently, and may have testified had he known about the back page of the form, is too speculative to warrant a new trial. *See United States v. Clark*, 385 F.3d 609, 620 (6th Cir. 2004) (concluding that the defendant suffered no prejudice from the late disclosure of agent notes because, among other things, the defendant's claim that without the notes he could not make an informed decision to enter a guilty plea was "simply too speculative to justify a new trial"). For these reasons, we conclude that there is no cause to disturb the verdict against Williamson because any error that may have occurred

in regard to the rights waiver form was harmless and could not have affected Williamson's substantial rights.

The district court's judgment is affirmed.