*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                 *Plaintiff-Appellee*,

     *v.*

VICTOR LAMONT GARCIA,
                 *Defendant-Appellant.*

No. 13-1344

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:12-cr-00107-1—Robert J. Jonker, District Judge.

Argued: November 20, 2013

Decided and Filed: July 10, 2014

Before: MOORE, GIBBONS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Tessa K. Hessmiller, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Dennis J. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. Sean C. Maltbie, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

GIBBONS, J., delivered the opinion of the court, in which SUTTON , J., joined and MOORE, J., joined in part. MOORE, J. (pp. 17–20), delivered a separate opinion concurring in the judgment.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. When officers arrived at an apartment complex to investigate reported gunfire, Victor Garcia fled. The officers pursued Garcia, and one officer saw objects fall from his person as he scrambled over a fence. Once the

officers had subdued and arrested Garcia, they returned to the fence and discovered two items among other snow-covered debris: a silver revolver nestled in the snow and a baseball cap perched atop the snow. A federal indictment and two-day trial followed, and the jury convicted Garcia of one count of being a felon in possession of a firearm. The district court subsequently sentenced Garcia to a Guidelines sentence of ninety-six months of imprisonment. Garcia now appeals. He maintains that the evidence was insufficient to establish that he possessed the revolver, the prosecutor improperly vouched for the credibility of a Government witness during closing arguments, and the sentence imposed by the district court was substantively unreasonable. We affirm Garcia's conviction and sentence.

## I.

Shortly before midnight, a woman in Kalamazoo, Michigan, awoke to the sound of gunfire—one initial shot followed by between two and four more. She immediately called 911, and as she was making the call she heard additional gunshots. She peered through her front window and saw someone "dart off." She described that person as wearing a baseball cap and an orange, thigh-length coat with fur around the hood. Officer Joseph Boutell and his partner were dispatched to the apartment complex, and as they pulled into its parking lot about three minutes later they saw a man—later identified as Garcia—wearing a white jacket[1] and walking through the complex. As far as the officers could tell, Garcia was not wearing a baseball cap.

Garcia looked in the direction of the officers' vehicle and quickened his pace. The officers parked and exited their vehicle, intent on following Garcia to investigate his involvement in the gunfire. As Garcia approached the building's corner, he stretched into a full sprint. The officers pursued Garcia but could not keep pace. Sergeant Chad VanderKlok had arrived on the scene, however, and he continued the pursuit. Garcia climbed over a fence and fell to the ground, and as he stood up, VanderKlok noticed that

---

[1]Witnesses testified that the perceived color of Garcia's coat depended on the lighting: It appeared to be white in bright light but appeared to be a darker color when it was not illuminated. There was no fur on Garcia's coat.

"some objects had fallen from his person." Garcia then continued to run toward a large pile of brush, and as he fell into the brush, VanderKlok caught Garcia and jumped onto his back. Garcia resisted arrest, but when Boutell caught up with them, the two officers were able to subdue Garcia, take him into custody, and place him in a squad car. An officer drove Garcia to the police station, and throughout the trip Garcia expressed concern about "his hat."

Meanwhile, VanderKlok searched the area where he had seen objects fall from Garcia's person. In the snow, he discovered a baseball cap and a silver revolver. The revolver was resting on top of an old boot, and both its handle and part of its barrel were buried in the snow.[2] The snow had fallen within the past twenty-four hours, and there were no tracks in the snow other than those of Garcia and the officers. The temperature at the time was twenty-three degrees, but beads of water appeared on the revolver. VanderKlok inferred at trial that "the gun was warmer than the snow because the water had not frozen, and obviously the temperature [was] below freezing." According to VanderKlok, the baseball cap and revolver were "the only two objects that appeared to have recently settled on top of the snow." But there were other objects in the area submerged beneath the snow, including a plastic jug and a cigar or jewelry box.

Three unfired rounds and two spent casings were inside the revolver's cylinder when it was seized. No fingerprints were found on the gun or the casings. No gunshot residue tests were performed, and although the gun was swabbed for DNA, no follow-up tests were conducted.

A federal grand jury returned an indictment charging Garcia with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and a jury convicted Garcia after a two-day trial in November 2012. The probation office's presentence investigation report recommended a base offense level of 24, then applied a two-level increase because the revolver was stolen.[3] That produced a total offense

---

[2]Garcia submitted two photographs of the revolver as an appendix to his brief in this court.

[3]The parties stipulated at trial that the revolver had been stolen but that Garcia did not participate in the theft.

level of 26.   Based on a criminal history category of IV, the report stated that the applicable Guidelines sentencing range was 92 to 115 months of imprisonment.

At the March 2013 sentencing hearing, the district court expressed concern about Garcia's vacillation between stages of articulateness and intelligence, on the one hand, and immaturity and violence on the other hand.   In the district court's mind, Garcia was proving himself to be incorrigible.   He was written up eighteen times while he was incarcerated awaiting trial and sentencing, for example.   The district court concluded that neither a departure nor a variance was warranted and sentenced Garcia to ninety-six months of imprisonment.   Garcia timely appealed.

## II.

Garcia advances three arguments on appeal.   He first contends that the evidence was insufficient to establish that he possessed the revolver because there was no direct evidence of his possession and the circumstantial evidence of possession is belied by a photograph showing that portions of the revolver were buried in the snow.   Garcia next argues that the prosecutor improperly vouched for the credibility of a Government witness.   And third, he challenges the substantive reasonableness of the sentence imposed by the district court.   We take each argument in turn.

## A.

Garcia maintains that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he possessed the revolver.   We review *de novo* a challenge to the sufficiency of the evidence in a criminal case. *United States v. Howard*, 621 F.3d 433, 459 (6th Cir. 2010).   The evidence must be viewed in the light most favorable to the prosecution, and we ask whether any rational trier of fact could have found the contested elements of the crime beyond a reasonable doubt. *Id.*   The defendant "bears a 'very heavy burden' when he challenges the sufficiency of the evidence." *United States v. Owens*, 426 F.3d 800, 808 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).   We can neither independently weigh the

evidence, nor make our own assessment of the credibility of the witnesses who testified at trial. *Howard*, 621 F.3d at 460.

A defendant's conviction under 18 U.S.C. § 922(g)(1) may be premised on either actual or constructive possession of a firearm. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "Actual possession requires that a defendant have immediate possession or control of the firearm, whereas constructive possession exists when the defendant 'does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" *Id.* (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). "The element of possession can be proven by either direct or circumstantial evidence." *Id.* "'Circumstantial evidence alone is sufficient to sustain a conviction.'" *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (quoting *Spearman*, 186 F.3d at 746).

The prosecution's case against Garcia was premised on a theory of actual rather than constructive possession. The United States posited that the revolver fell from Garcia's person as he clambered over a fence in an effort to avoid apprehension by the officers who pursued him. The Government acknowledged the absence of direct evidence proving actual possession: No one saw Garcia holding the weapon, and VanderKlok acknowledged that he never saw Garcia drop the gun. The prosecution instead relied on circumstantial evidence and a chain of inferences to establish Garcia's possession of the revolver: Garcia fled when the officers approached. He resisted arrest. VanderKlok saw objects fall from Garcia as he fell from the fence. When VanderKlok returned to that area to see what had fallen, he discovered the baseball cap and silver revolver sitting about eighteen inches apart. Those objects, and only those objects, rested on the freshly-fallen snow. Despite the sub-freezing air temperature, small droplets of water were visible on the revolver's surface. Officers found no contraband on Garcia's person and no other evidence to explain his flight. The Government's witnesses recited these facts to the jurors, and the prosecution asked them to infer that Garcia possessed the revolver while fleeing the officers.

We have found similar circumstantial evidence to be sufficient to sustain a conviction for actual possession of a firearm.  In *United States v. Barnett*, we sustained a defendant's conviction where the officers saw the defendant throw a long black object to the ground as he fled.  398 F.3d 516, 522 (6th Cir. 2005).  The officers subsequently discovered a black and chrome rifle in the front yard, and we held that the prosecution had presented sufficient evidence to establish that the defendant had possessed the weapon.  *Id.*  Likewise, in *United States v. Williamson*, the pursuing officers saw the defendant pull a black object from his side and throw it.  483 F. App'x 139, 142 (6th Cir. 2012).  The officers discovered a black pistol in the area, and one officer testified that "the location of the pistol was consistent with the direction that [the defendant] had thrown the object."  *Id.*  We held that there was sufficient evidence that the defendant had possessed the weapon.  *Id.*

Those cases are distinguishable, says Garcia, because neither Boutell nor VanderKlok saw Garcia possess an object that specifically resembled the silver revolver.  This argument conflates sufficiency with necessity.  The prosecution's case doubtless would have been stronger had VanderKlok recognized one of the "objects" to be a shiny silver revolver.  Yet we have never held that a possession conviction cannot be sustained without direct evidence that the defendant possessed something resembling the contraband that the defendant stands convicted of possessing.  Quite the opposite.  Our possession cases establish that no single fact or set of facts is a necessary condition to establish possession of contraband.  Rather, we must view *all* of the evidence, both direct and circumstantial, in the light most favorable to the prosecution, then ask whether any rational trier of fact could have found beyond a reasonable doubt that the defendant possessed the contraband.  *Howard*, 621 F.3d at 459.

We have sustained drug possession convictions in analogous cases.  The defendant in *United States v. Clemons* led officers on a high-speed car chase before exiting his vehicle and fleeing on foot.  9 F. App'x 286, 287 (6th Cir. 2001).  An officer intercepted the defendant, drew his firearm, and instructed the defendant to halt.  *Id.*  As the defendant came to a stop, the officer witnessed the defendant "toss[] an object out

of his hand." *Id.* Another officer corroborated that statement, testifying that she saw the defendant "throw an item to the ground." *Id.* The officers arrested the defendant, returned to the area where the defendant had thrown the object, and discovered a bag of crack cocaine. *Id.* We held that the evidence was sufficient to sustain a possession conviction, noting specifically that the evidence of flight was probative of criminal activity. *Id.* at 289.

As officers approached the defendant in *United States v. Jones*, he "darted behind a large tree for a second or two" and reemerged to ask why the officers were "messing with [him]." 63 F. App'x 826, 828 (6th Cir. 2003) (internal quotation marks omitted). One officer testified that the defendant "ma[de] a motion with his hand behind [the] tree." *Id.* The officers looked behind the tree and discovered a vial filled with twenty-three rocks of crack cocaine. *Id.* After the officers arrested the defendant and found $597 on his person, the defendant admitted that he was a drug dealer, but he did not confess to possession of the crack cocaine. *Id.* We held that this evidence, including the incriminating statement, was sufficient to sustain the possession conviction even though no witness saw the defendant possess the vial of drugs. *Id.* at 831.

Other circuits have sustained possession convictions in similar circumstances as well. The defendant in *United States v. Burton* fled when officers approached, and he tossed two items to the ground. 30 F.3d 136, at *1 (7th Cir. 1994) (per curiam). The officers described the second item as a "black shiny object" but described the first item only as "something." *Id.* Officers searched the area where the defendant had thrown the first object—the "something"—and found a pistol and loaded clip. *Id.* The officers then searched the area where the defendant had thrown the "black shiny object" and discovered a small film container with twelve rocks of crack cocaine inside. *Id.* The Seventh Circuit upheld the conviction, highlighting that the pistol and clip were the only "notable objects found in the vicinity" where the "something" had been thrown. *Id.* at *2.

An officer pursued the fleeing defendant in *United States v. Rucker* and saw him "bend down and place something on the ground." 188 F. App'x 772, 774 (10th Cir.

2006). The officer ultimately apprehended the defendant, who resisted arrest, and another officer retraced the route of the pursuit and discovered a handgun. *Id.* A store owner identified the defendant as the person who robbed his store and testified that the gun used in the robbery was similar to the gun recovered in the field. *Id.* at 775–77. Although no fingerprints were recovered on the weapon, the court concluded that there was sufficient evidence to establish that the defendant possessed the handgun, stating that the defendant's "theory that the gun could already have been there is wholly speculative and does not undermine the jury's contrary finding." *Id.* at 776; *see also United States v. Jefferson*, 206 F. App'x 654, 655–56 (8th Cir. 2006) (per curiam) ("We have repeatedly held there is sufficient evidence to support a conviction for felon in possession where a gun was immediately recovered from the location where the defendant was observed dropping something." (citing *United States v. Light*, 406 F.3d 995, 998 (8th Cir. 2005); *United States v. Echols*, 144 F.3d 584, 585 (8th Cir. 1998); *United States v. Rankin*, 902 F.2d 1344, 1345–46 (8th Cir. 1990))).

These decisions reveal no single hallmark of sufficiency in cases charging actual possession of contraband. No common factual thread runs through each of the cases, and neither the presence nor the absence of any particular fact has been deemed dispositive. Accordingly, to sustain a conviction for actual possession of contraband that the defendant allegedly discarded before his or her arrest, the witness linking the defendant to the contraband need not be able to describe with specificity the object thrown by the defendant if adequate circumstantial evidence links the defendant to the contraband. The relevant question in these cases is whether the Government's theory is supported by sufficient circumstantial evidence of guilt. Although the circumstantial evidence must support a determination of guilt, that evidence "need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The circumstantial evidence presented at Garcia's trial supported the reasonable inference that the revolver was one of the objects that fell from Garcia's person as he scaled the fence. Portions of the gun's handle and barrel were buried in the snow, but

the revolver's cylinder lay on top of the snow. Jurors thus could infer that the gun came to rest in that position since the last snowfall less than twenty-four hours earlier. There were no other footprints in the area, suggesting that no one else had visited that area since the last snowfall. Despite the below-freezing ambient air temperature, moreover, there were droplets of water on the gun. Although rational jurors might draw different inferences from the water's presence, one reasonable inference is that the gun had just recently come to occupy its position on the snowy ground. The reasonableness of that inference is further enhanced by the reports of gunfire just minutes before Garcia fled the officers; the water droplets, the revolver's proximity to Garcia, and the two spent rounds in the revolver together permitted jurors to infer that Garcia fired at least some of those gunshots. Once the district court determined that evidence of Garcia's flight from the officers was admissible, moreover, the jurors were entitled to draw reasonable inferences, including inferences of guilt, from the fact of his flight. *See United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005). Because the officers found no contraband on Garcia's person when they arrested him, a reasonable juror could infer that Garcia fled out of fear that he would be apprehended while unlawfully possessing the revolver. We need not determine whether the evidence would have been sufficient if the water droplets were not visible on the revolver's surface, or if Garcia had not fled when the officers approached. The circumstantial evidence presented to the jurors, examined *in toto*, was sufficient to support the verdict. *See United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007) (en banc) ("[W]e cannot overturn the jury's decision merely because it had to draw reasonable inferences to find [the defendant] guilty.").

The inference of possession is unreasonable, Garcia contends, because the gun was partially buried in the snow, as indicated in the photographs that the United States submitted to the jury. We decline Garcia's invitation to weigh the photographic evidence anew; that is the jury's prerogative, not ours. *See United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006). Garcia's trial counsel made that argument to the jury

during closing arguments, and the jury rejected it.[4]  For similar reasons, we reject Garcia's attempt to shift the court's focus to all of the evidence that the United States *did not* present to the jury.  He places great emphasis on the lack of fingerprint and DNA evidence, and the Government's failure to conduct gunshot residue analysis.  But we are confined to weighing the sufficiency of the evidence the government presented to the jury; we may not consider the potential magnitude of the evidence not presented.  The absence of evidence is an argument for the jury.

The concurring opinion does not dispute the correct standard yet insists that we may consider the magnitude of the evidence not presented in evaluating a sufficiency-of-the-evidence challenge, citing language from *United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009), in a parenthetical and saying that the fact that the proof included evidence of the absence of evidence warrants consideration of the lack of fingerprint or DNA evidence.  Yet *Bailey* stands for no such principle, and the concurrence's assertion goes far beyond the universally accepted standard for evaluating sufficiency-of-the-evidence challenges.  As *Bailey* and other cases teach, the standard is whether the evidence presented is insufficient "for any rational factfinder to conclude beyond a reasonable doubt" that the Government has proven an essential element of the case.  *Id.* at 949; *see also United States v. Dedman*, 527 F.3d 577, 595 (6th Cir. 2008).  This is indeed "horn book law."  *See United States v. Zepeda*, 738 F.3d 201, 213 (9th Cir. 2013) ("It is horn book law that we, as an appellate court, are limited to the record before the jury when assessing the sufficiency of the evidence.").  *Bailey* held that the Government had not met that burden, and the language referred to by the concurring opinion is merely an illustrative explication of why the evidence that was presented was insufficient.

To be sure, discussing evidence not presented may provide a very useful way of explaining the import or lack of import of what was presented in a particular case.  The

---

[4]The defendant in *Williamson* similarly argued that "it was unlikely, if not impossible, to throw a pistol from the hallway at the top of the stairs, around the closet door, and into the closet, especially if it made only one 'thump.'"  483 F. App'x at 142.  We stated that the jurors, who had photographic evidence in front of them, could make that determination themselves.  *Id.* (citing *United States v. Daniels*, 170 F. App'x 409, 413 (6th Cir. 2006)).  So too here.

court in *Bailey* engaged in no inappropriate analysis. But at the end of the day, we look at what was presented, not what was not presented—whether or not an attorney has questioned a witness about the absence of specific evidence. What was not presented is not the focus and is not properly considered in application of the ultimate test. To conclude otherwise is an invitation to examine whether the Government might have presented a more convincing case, not whether it in fact presented a sufficient one. The concurring opinion, even though agreeing with our result, strays into a weighing of the evidence, an exercise that we do not undertake here, and one properly for the jury.

The United States thus presented sufficient evidence that Garcia possessed the revolver and that the revolver fell to the ground as he climbed the fence. Although Garcia's conviction required the triers of fact to accept the chain of inferences that the United States posited at trial, each of those inferences is reasonable and supports Garcia's conviction.

**B.**

Garcia next argues that the prosecutor improperly vouched for the credibility of Sergeant VanderKlok during his closing argument. We disagree.

Because "[p]rosecutors have a special duty to seek justice, not merely to convict," *Connick v. Thompson*, 131 S. Ct. 1350, 1362 (2011) (internal quotation marks omitted), the Constitution and the courts impose restraints on the trial conduct of Government attorneys that are sometimes more onerous than the analogous restraints imposed on the defense. One such restriction is the prohibition of prosecutorial vouching. Government attorneys may render disinterested arguments, both offensive and defensive, to persuade the jurors of the case's merit, but a prosecutor may not taint the jurors' deliberations with the attorney's own opinions and convictions. *See United States v. Francis*, 170 F.3d 546, 549–51 (6th Cir. 1999).

Allegations of improper vouching are reviewed for both impropriety and flagrancy. Under this bifurcated analysis, we first determine whether the prosecutor's statement was improper. *Francis*, 170 F.3d at 549. "Improper vouching occurs when

a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004) (internal quotation marks omitted). "Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Id.* at 607–08 (internal alterations and quotation marks omitted).

If we conclude that the prosecutor improperly vouched for a witness's credibility, we then ask whether the prosecutor's remarks were sufficiently flagrant to warrant reversal of the defendant's conviction. Several factors inform our assessment of flagrancy, including: (1) whether the prosecutor's statement tended to mislead the jurors or unfairly prejudice the defendant, (2) whether the improper vouching consisted of one isolated comment or a series of improper remarks, (3) whether the improper statement appears to have been deliberate or inadvertent, and (4) the strength of the Government's case against the defendant. *Francis*, 170 F.3d at 549–50.

> During his closing argument, the Assistant United States Attorney stated:
>
> If Sergeant VanderKlok is lying about what he saw, why didn't he just come in here and tell you, "Yeah, I saw him drop the gun"? Wouldn't that make it a lot easier for everybody? "I saw him drop the gun." Because that's not what he saw. He came in here, he took an oath to tell the truth, and he told you the truth about what happened that night. About what he saw.

Garcia argues that "the prosecutor improperly used his position to vouch for his key witness and other evidence presented by the prosecution and to definitively inform the jury that his office was certain of Garcia's possession of the firearm." Because Garcia did not object to the prosecutor's statement during the Government's closing argument, we review for plain error. *See United States v. Jackson*, 473 F.3d 660, 671 (6th Cir. 2007).

We find the prosecutor's remarks to be unobjectionable. The prosecutor never suggested that he possessed corroborative evidence that had been withheld from the jurors, nor did he otherwise "imply any special knowledge" of VanderKlok's credibility.

*See United States v. Reid*, 625 F.3d 977, 984 (6th Cir. 2010). He did not speak in the first person, nor did he otherwise profess a personal belief in the veracity of VanderKlok's testimony. *See United States v. Henry*, 545 F.3d 367, 380 (6th Cir. 2008) (prohibiting statements of "clear personal belief"); *United States v. Krebs*, 788 F.2d 1166, 1176–77 (6th Cir. 1986) (noting the potential impropriety of phrases such as "I believe," "I suggest," and "I submit"). He spoke instead as an advocate seeking to restore, through argument rather than his own personal assurance, the credibility of his chief witness. That is a permissible prosecutorial function. *Cf. Jackson*, 473 F.3d at 672 ("[A]lthough the remarks were repeated and improper, it appears that the prosecutor was attempting, however ineptly, to argue that the government's witnesses were credible because their testimony was consistent and corroborated by non-testimonial evidence and because they had no reason to lie. While Jackson may disagree with each of those contentions, none was founded upon an implication that the prosecutor personally believed the witnesses or knew of evidence not before the jury that demonstrated their truthfulness.").

The establishment or rehabilitation of a witness's credibility may amount to improper vouching even if the prosecutor refrains from using phrases such as "I believe" and "I submit." A first-person narrative is neither necessary nor sufficient to establish impropriety. But our cases have found improper vouching only where the disputed remark put the spotlight on the prosecutor—the prosecutor's personal beliefs, the prestige of her office, her power to enforce and implement the plea agreement, her unique knowledge of the facts, etc. Measured against that standard, the prosecutor's statement at the close of Garcia's trial was permissible. The prosecutor's comment—"he told you the truth about what happened that night"—might, in other contexts, be interpreted as a personal endorsement of VanderKlok's candor. Here, however, the remark does not lend itself to that interpretation. Rather, the prosecutor argued that the alleged untruthfulness of VanderKlok's testimony was belied by the ostensibly commonsense conclusion that if VanderKlok had decided to lie, he would have spun a more persuasive yarn. The jurors were free to accept or reject the prosecutor's argument, but it constituted permissible lawyering, and accordingly, we find no error.

**C.**

Garcia also contends that his sentence was unreasonable because the district court failed to consider all of the applicable factors under 18 U.S.C. § 3553(a), gave an unreasonable amount of weight to Garcia's criminal history, and impermissibly based its sentence on a factor that is not enumerated in § 3553(a).

Garcia presents his claims under the banner of substantive unreasonableness, but some of his allegations address procedural rather than substantive unreasonableness.  A district court commits significant procedural error when it fails to calculate the Guidelines sentencing range, improperly applies the Guidelines or otherwise calculates the incorrect Guidelines sentencing range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence. *United States v. Brooks*, 628 F.3d 791, 795–96 (6th Cir. 2011).  The substantive component of our reasonableness inquiry instead focuses on the actual sentence imposed by the district court, including the extent of any variance from the applicable Guidelines sentencing range.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  To determine whether a sentence is substantively unreasonable, we look to whether the district court chose the sentence arbitrarily, based its sentence on impermissible factors, or gave unreasonable weight to one of the § 3553(a) factors.  *Brooks*, 628 F.3d at 796.  The reasonableness of the sentence is reviewed for abuse of discretion, and if the district court imposed a sentence within the applicable Guidelines sentencing range, we presume the sentence to be substantively reasonable.  *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013).

Garcia first contends that the district court did not afford sufficient weight to certain § 3553(a) factors, including mitigating circumstances and the nature of the offense.  More generally, he argues that the sentence "was simply greater than necessary to punish the crime . . . and greater than necessary to achieve appropriate sentencing goals."  The record reveals that the district court duly considered each of the § 3553(a) factors.  *See* DE 76, Sentencing Tr., Page ID 726 ("The question then is what is the sentence that is sufficient but not greater than necessary under Section 3553 to

accomplish all the purposes that counsel have alluded to here? The need to punish and deter appropriately, the need to protect the public, the need to promote rehabilitative opportunities, the need to reflect overall the seriousness of the offense and to promote respect fo the law. The need to look at Mr. Garcia as an individual, both in terms of what he did here and in terms of what he did in his life coming to this point and try to balance all of those factors."). The sentencing court had presided over Garcia's trial and was familiar with the nature and circumstances of the offense. The transcript of the sentencing hearing discloses that the court reviewed its trial notes before the hearing, and the court ultimately stated, "I just can't find a basis on this record to depart or vary outside the guideline range." Insofar as Garcia raises a procedural challenge to the application of the two-level enhancement because Garcia did not participate in the theft of the firearm, the Guidelines provide that the enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen," U.S.S.G § 2K2.1 cmt. n.8(B), and we have held that application of the enhancement is reasonable even where the defendant did not know that the gun was stolen, *United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005).

The district court also did not give undue weight to Garcia's criminal history. To be sure, the court spent considerable time addressing Garcia's criminal history and proclivity for violence. The parties discussed at some length Garcia's behavior while incarcerated, for example, and the court stated that Garcia's prior convictions "weren't all terribly serious, but some were, and the pattern is very disturbing." But the court considered Garcia's criminal history for the permissible purpose of determining the proper sentence in light of the need for deterrence and public protection, and the court acknowledged both the mitigating and aggravating effects of Garcia's extensive criminal history. The transcript reveals thoughtful discussion and consideration of Garcia's criminal past, and we find the court's analysis to be eminently reasonable.

Nor did the district court act improperly when it observed that Garcia was on the verge of being classified as an armed career criminal. The court adverted to the fifteen-year mandatory minimum sentence that would have applied had Garcia qualified as an

armed career criminal, but the court did not actually impose that sentence.  Garcia therefore has no foundation from which to argue that his sentence was based on an impermissible factor.

This court must afford "due deference" to the district court's determination of the appropriate length of a defendant's sentence.  *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (internal quotation marks omitted).  We find no reason to question the district court's exercise of its discretion when it applied the § 3553(a) factors and calculated Garcia's sentence, and Garcia thus cannot overcome the presumption that the district court's Guidelines sentence was substantively reasonable.

**III.**

For these reasons, we affirm.

―――――――――――――――――――――

**CONCURRING IN THE JUDGMENT**

―――――――――――――――――――――

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the judgment of the court. However, I note my disagreement with the majority's refusal to consider the lack of fingerprint or DNA evidence tying Garcia to the gun recovered from the snow. The majority emphasizes that our sufficiency-of-the-evidence review is restricted to the evidence presented at trial. The evidence that no fingerprints were recovered from the gun and no DNA testing was conducted *was* introduced at trial. On direct examination by the government, a forensics examiner for the Kalamazoo County Sheriff's Department testified that no fingerprints were recovered from the gun, shell casings, or bullets. R. 74 (Trial Tr. I at 205) (Page ID #559). The examiner testified that conditions were "far from ideal" for the recovery of fingerprints due to the gun being found in snow and the materials of which the gun and bullets were made. *Id.* at 205–07 (Page ID #559–61). On cross-examination by Garcia's counsel, the examiner testified that the trigger, trigger guard, and grip of the gun were swabbed for DNA, but that the DNA was never tested. R. 75 (Trial Tr. II at 229) (Page ID #583). The examiner testified that factors in deciding whether to run tests included cost, the expectation of a probative result, and time. *Id.* at 231 (Page ID #585). Garcia did not conduct independent fingerprint or DNA testing that he is attempting to introduce for the first time to this court; he is simply asking this court to consider testimony that both he and the government solicited on the investigative decisions of the police and forensic examiners. The failure to recover fingerprints and the decision not to conduct DNA testing was in front of the jury and so may be considered in our review of the sufficiency of the evidence. *See United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009) (reversing a conviction due to insufficient evidence and noting that "[o]f particular significance, the government could not show that Bailey's fingerprints were on the gun"). Considering this, and all other evidence presented at trial "in the in the light most favorable to the prosecution," I conclude that "*any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt," *United States v. Geisen*, 612 F.3d 471, 488 (6th Cir. 2010) (internal quotation marks omitted), and therefore agree that the government produced sufficient evidence of Garcia's guilt.

I also agree that the district court did not abuse its discretion in sentencing Garcia.

I do not agree, however, that a prosecutor telling the jury during closing argument that a witness told the truth is "unobjectionable." Maj. Op. at 13. The prosecutor suggested that VanderKlok must have been telling the truth because if he was going to lie, he would have told a better lie.[1] Then, the prosecutor stated that "[VanderKlok] came in here, he took an oath to tell the truth, and he told you the truth about what happened that night. About what he saw." R. 75 (Trial Tr. at 338) (Page ID #692). Together, these statements constitute an improper expression of the prosecutor's personal belief about VanderKlok's credibility.

The prosecutor's theory that a liar would have told a more beneficial lie is not an "ostensibly commonsense conclusion." Maj. Op. at 14. The psychology of lying is not a matter of common sense or common knowledge. *Cf. Slagle v. Bagley*, 457 F.3d 501, 519 (6th Cir. 2006) (holding that a prosecutor may properly ask the jury to use common knowledge to make the inference that walking across a floor with floorboards produces a creaking noise). The prosecutor's statement that if VanderKlok were lying he would have said that he saw Garcia drop the gun is nothing more than speculation. This speculative theory was followed by the blunt comment that VanderKlok "told you the truth." This was not an argument for a witness's credibility grounded in the evidence introduced at trial. *Cf. United States v. Reid*, 625 F.3d 977, 985 (6th Cir. 2010) (holding that a prosecutor's suggestion that a lying witness would have lied more persuasively was not improper when followed by the statement that the witness's testimony was corroborated by four other people); *Cristini v. McKee*, 526 F.3d 888, 901–02 (6th Cir.

---

[1] Specifically, the prosecutor stated, "[i]f Sergeant VanderKlok is lying about what he saw, why didn't he just come in here and tell you, 'Yeah, I saw him drop the gun'? Wouldn't that make it a lot easier for everybody? 'I saw him drop the gun.' Because that's not what he saw." R. 75 (Trial Tr. at 338) (Page ID #692).

2008) (calling witnesses "liars" was not constitutionally improper because the "arguments focused the jury on the evidence, not the prosecutor's personal opinion"). Nor did the prosecutor ask the jury to conclude that VanderKlok was credible based on his demeanor or the specific circumstances of his testimony. *Cf. United States v. Jackson*, 473 F.3d 660, 672 (6th Cir. 2007) (holding that a prosecutor's repeated statements that a witness told the truth were improper but did not express a personal belief in the witness's credibility because the prosecutor asked the jurors to infer credibility from the consistency of the testimony and the fact that the witness had no reason to lie). Instead, based on the prosecutor's personal opinion that a liar would have told a different story, the prosecutor shared his conclusion that VanderKlok told the truth.

The majority suggests that a prosecutor's comments are not improper vouching unless the remarks "put the spotlight on the prosecutor—the prosecutor's personal beliefs, the prestige of her office, her power to enforce and implement the plea agreement, her unique knowledge of the facts, etc." Maj. Op. at 13. A remark need not be so obvious to be improper. This circuit has clearly held that a prosecutor can express a personal belief without making an "I" statement. *See Hodge v. Hurley*, 426 F.3d 368, 378 n.20 (6th Cir. 2005); *United States v. Krebs*, 788 F.2d 1166, 1176–77 (6th Cir. 1986). Stating that VanderKlok told the truth—not based on the evidence or the jury's ability to assess credibility, but simply based on the prosecutor's own personal speculation about how liars lie—is an improper expression of personal belief. The prosecutor need not do anything special to shine a spotlight on the prestige of the office. By standing in front of the jury as the representative of the United States government, the prosecutor embodies the office, and the very act of expressing the prosecutor's "personal belief in the truthfulness of the witness's testimony . . . plac[es] the prestige of the office of the United States Attorney behind that witness." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). Unmoored from the evidence or inferences based on the demeanor of the witness, this prosecutor's remarks reflected nothing more than his personal belief about the veracity of VanderKlok's testimony. The remarks, therefore, were improper.

Nonetheless, I conclude that it was not plain error for the district court to fail to strike the statements sua sponte. The evidence against Garcia was not strong, so VanderKlok's testimony that he saw objects fall from Garcia was significant. However, the statement that VanderKlok told the truth was a single, isolated comment. The prosecutor's reminder to the jury that they were "to decide if what [they] heard on the witness stand was true," R. 75 (Trial Tr. at 316) (Page ID #670), and the district judge's instruction to the jury that it was the "sole judge of the credibility of witnesses," *id.* at 307 (Page ID #661), mitigated the comment's potential to mislead. *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Given all the circumstances, I conclude that the district court did not plainly err in failing to strike sua sponte the prosecutorial statements in the context of this case.