NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0063n.06

No. 22-3921

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 09, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| v. | ) | |
| | ) | |
| WYDELL DIXON, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. When a barking pit bull dissuaded their pursuit of a man suspected of possessing marijuana, police officers turned their attention to Wydell Dixon, who was standing in a nearby driveway making a throwing motion. Seconds later, the officers heard a metallic clang and determined that Dixon had thrown a gun onto the concrete. Dixon was convicted of being a felon in possession of a firearm and sentenced to 100 months of imprisonment. He appeals both his conviction and sentence. Because the conviction was supported by sufficient evidence and the sentence was not procedurally or substantively unreasonable, we affirm.

I

On the night of July 20, 2020, officers with the Cleveland Police Department's Gang Impact Unit patrolled the Slavic Village area of southeast Cleveland, Ohio, in response to several complaints of drug activity and gun violence. While driving down Fullerton Avenue, a detective alerted his colleagues to a man holding what the detective thought was a small bag of marijuana.

As the officers parked their patrol cars, the man grabbed a bookbag and ran across the street into a house. The officers attempted to pursue him but stopped when a pit bull emerged from the house.

One of the officers noticed another man—later identified as Wydell Dixon—standing in the driveway of the house with his hands raised and making a throwing motion. Two officers heard a clanking sound of metal hitting concrete. They detained Dixon and searched the surrounding area, where they found a Smith & Wesson 9-mm handgun with an extended magazine. The detaining officer then informed Dixon of his *Miranda* rights, received verbal confirmation from Dixon that he understood those rights, and asked Dixon whether the recovered handgun was his. Although Dixon initially did not respond to the officer's questions, he eventually nodded his head up and down.

A federal grand jury indicted Dixon on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a). At trial, Dixon stipulated that (1) he had been convicted of a felony prior to this arrest; (2) he knew of his felon status at the time; and (3) the handgun found in the driveway traveled in interstate commerce. Thus, the only disputed element of 18 U.S.C. § 922(g)(1) was whether Dixon knowingly possessed the gun.

On the morning of the trial, Dixon attempted to present a previously undisclosed witness named Davell Hawthorne, who told the district court that he had purchased the firearm in question at a gun show in New York City in March 2020 and carried it back to his hotel. In addition, Hawthorne was prepared to testify that he had been sitting in a parked car on the night in question and that the gun had fallen out of the car just as the officers had arrived. During the first break in the trial and before the district court ruled on whether to allow Hawthorne to testify, the government's trial counsel asserted that Hawthorne had thus admitted to violating New York's gun-carry laws and had two outstanding arrest warrants in Ohio. The district court appointed a

federal public defender to advise Hawthorne on the legal risks he could face if he testified. After consulting with the public defender, Hawthorne opted not to testify. The jury heard testimony from two of the officers involved and convicted Dixon of the felon-in-possession charge.

Based on Dixon's two prior felonies and the gun's extended magazine, the Presentence Report (PSR) computed an offense level of 26. Dixon was assigned five criminal-history points for crimes that he committed when he was eighteen and nineteen years old and two more points because he committed the instant offense while he was still on parole for his second felony. This total score of seven placed him in criminal-history category IV, resulting in a range under the Sentencing Guidelines of 92 to 115 months of imprisonment. The district court imposed a sentence of 100 months of imprisonment, followed by a three-year term of supervised release.

II

Dixon claims that there was insufficient evidence to sustain his conviction. A conviction of being a felon in possession of a firearm requires that the government prove beyond a reasonable doubt "(1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." *United States v. Hall*, 20 F.4th 1085, 1107 (6th Cir. 2022) (quoting *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003)). Because Dixon does not dispute that he stipulated to the first and third elements, our only question on review is whether there was sufficient evidence to support the jury's finding that Dixon knowingly possessed the gun.

If the government presents insufficient evidence to sustain a conviction, the defendant is entitled to a judgment of acquittal. *See* Fed. R. Crim. P. 29. Although this type of claim is reviewed de novo, a defendant "must surmount a demanding legal standard." *United States v. Potter*, 927

F.3d 446, 453 (6th Cir. 2019).  A reviewing court asks only "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). We must not "intrude on the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Ibid.* (internal quotation marks omitted).  Instead, our review is limited to whether "the government's case was so lacking that it should not have even been submitted to the jury." *Ibid.* (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)).

Under this standard, the government presented sufficient evidence from which a rational trier of fact could have found that Dixon knowingly possessed the gun.  The jury heard testimony from two officers involved with Dixon's arrest.  Both testified that they saw Dixon standing in the driveway and throwing an object behind him.  Both testified that, seconds later, they heard a clanging sound of metal hitting concrete.  Although neither officer could say for certain that the object they saw in Dixon's hand was a gun, one officer testified that he found a Smith & Wesson 9-mm gun in the area where the object had landed.  And that gun was scraped on one side, suggesting that it had collided with some hard surface.  This evidence—which, contrary to Dixon's assertion, goes beyond Dixon's mere proximity to the firearm—is enough to support a rational trier of fact in finding Dixon knowingly possessed the gun.

Dixon argues that we should discount the officers' testimony because the driveway was dark and unlit, the testimony was internally inconsistent, and one officer simply "parrot[ed]" the other's story.  Appellant Br. at 14.  But weighing the credibility of witnesses is a job for the jury, not an appellate court.  *See Musacchio*, 577 U.S. at 243.  Though it is true that the officers did not

see Dixon in possession of the gun, and the government presented no forensic evidence that connects Dixon to the gun, "at the end of the day, we look at what was presented, not what was not presented." *United States v. Garcia*, 758 F.3d 714, 722 (6th Cir. 2014). We "cannot overturn the jury's decision merely because it had to draw reasonable inferences to find [Dixon] guilty." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007). Accordingly, we find that the government presented sufficient evidence to sustain Dixon's conviction.

III

Dixon next challenges his sentence on two grounds. First, he claims that the district court procedurally erred by considering allegations in his PSR that he had committed misconduct while in pretrial detention. Second, Dixon claims that his sentence was substantively unreasonable. Neither challenge succeeds.

*Procedural Reasonableness.* A criminal sentence must be procedurally reasonable. The sentencing court must "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible facts, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). We review the district court's performance of these tasks for abuse of discretion, recognizing that any legal conclusions are subject to our de novo review and that any factual findings must stand unless clearly erroneous. *Ibid.*

Normally, we conduct our procedural-reasonableness review by ensuring that the district court: (1) properly calculated the Guidelines range; (2) gave both the defendant and the government adequate opportunity to argue for their preferred sentence and considered all the § 3553(a) factors to determine whether they support each party's requested sentence; and (3)

adequately explained its chosen sentence to allow for meaningful appellate review. *United States v. Bolds*, 511 F.3d 568, 579–80 (6th Cir. 2007). Here, though, our task is simpler. Dixon did not object to the offense level, criminal-history category, or resulting Guidelines range. His sole procedural challenge is that the district court improperly considered three paragraphs of the PSR that detail Dixon's alleged misconduct while in pretrial custody. At the sentencing hearing, Dixon disputed these allegations and produced two letters from detention-center staff attesting that Dixon did not receive any punishment for misconduct at the center.

But we need not assess the veracity of these allegations because they did not affect the district court's sentencing decision. The district court stated twice at the sentencing hearing—including once in response to a *Bostic* objection[1] to any rulings based on the alleged misconduct—that it would sentence Dixon to 100 months of imprisonment regardless of any issues that he had while in detention. So, any potential error by the district court in considering the PSR's allegations of Dixon's misconduct in detention is harmless and does not require remand for sentencing. *See Williams v. United States*, 503 U.S. 193, 203 (1992); *United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007).

*Substantive Reasonableness.* A criminal sentence must also be substantively reasonable, meaning that it is not too long or too short. *See Rayyan*, 885 F.3d at 442. A claim that a sentence is substantively unreasonable is essentially a claim that the court placed too much weight on some § 3553(a) factors and too little on others. *Ibid.* A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient

---

[1] *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (instructing "district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised").

but not greater than necessary to comply with the purposes" of § 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (cleaned up). We review the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007).

Dixon admits that his 100-month sentence falls within his Guidelines range. The Supreme Court has held that appellate courts may, but are not required to, apply a rebuttable presumption of reasonableness to within-Guidelines sentences. *Rita v. United States*, 551 U.S. 338, 347–52 (2007); *see also Gall*, 552 U.S. at 51. Our court has chosen to do so. *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc); *United States v. Sears*, 32 F.4th 569, 576 (6th Cir. 2022). We therefore start from the rebuttable presumption that Dixon's sentence is substantively reasonable.

Dixon has not rebutted the presumption here. He argues that the district court gave undue weight to his prior convictions and ignored his efforts to become a law-abiding citizen. We disagree. It is hard to see how a felon found in possession of a firearm with an extended magazine—while still on parole for his prior felony—has "matured out of his criminal tendencies." Appellant Br. at 21. But even so, Dixon has not shown any persuasive basis to second-guess the district court's weighing of the § 3553(a) factors. *See Rayyan*, 885 F.3d at 443. He argues that his sentence "created a sentencing disparity with others similarly situated." Appellant Br. at 22. But Dixon received a sentence within his Guidelines range. The very nature of the Sentencing Guidelines means that Dixon is similarly situated to other defendants with the same Guidelines range. *See Gall*, 552 U.S. at 54 (explaining that a district court that correctly calculated the Guidelines range "necessarily gave significant weight and consideration to the needs to avoid unwarranted disparities"). Accordingly, Dixon has failed to show that his sentence is substantively unreasonable.

IV

For the foregoing reasons, we **AFFIRM** the judgment of the district court.